[Cite as *State v. Biggs*, 2022-Ohio-2481.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

    Plaintiff-Appellee

-vs-

JOEL D. BIGGS

    Defendant-Appellant

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. John W. Wise, J.

Case No. 21 CAA 09 0048

O P I N I O N

CHARACTER OF PROCEEDINGS:    Appeal from the Delaware County Court of Common Pleas, Case No. 21 CR I 05 0270

JUDGMENT:    Reversed and Remanded

DATE OF JUDGMENT ENTRY:    July 19, 2022

APPEARANCES:

For Plaintiff-Appellee

MELISSA A. SCHIFFEL
Delaware County Prosecuting Attorney

CHRISTOPHER E. BALLARD
Assistant Prosecuting Attorney
145 N. Union Street – 3rd Floor
Delaware, Ohio 43015

For Defendant-Appellant

JOEL M. SPITZER
495 S. State Street
Marion, Ohio 43302

*Hoffman, J.*

{¶1} Defendant-appellant Joel Biggs appeals the judgment entered by the Delaware County Common Pleas Court convicting him of gross sexual imposition (R.C. 2907.05(A)(1)) and sentencing him to a period of community control not to exceed three years. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} In April of 2021, Appellant lived in an apartment in Delaware, Ohio with his girlfriend, Gabbie. A.I. had been friends with Gabbie since elementary school. A.I. had recently moved back to Ohio from Florida, and was living with her father. However, A.I. and Gabbie discussed A.I. moving in with Gabbie and Appellant, as they had a spare bedroom in their apartment. While A.I. was still living in Florida, Gabbie asked A.I. if she would be interested in engaging in a threesome with Gabbie and Appellant. A.I. responded she would consider the possibility of a threesome.

{¶3} A.I. planned an overnight visit at Appellant's apartment on April 10, 2021. During the evening hours, the group watched a movie, "Cat in the Hat." The next day, Gabbie and A.I. went to the grocery store to get hot chocolate for the evening. While shopping at Meijer, Gabbie asked A.I. if she was still interested in a threesome. A.I. was not sexually attracted to Appellant, and responded she was not interested in a threesome.

{¶4} During the evening of April 11, 2021, the group drank alcohol and smoked marijuana at the apartment. They attempted to watch the movie "Frozen II," but the movie would not stream properly in the living room. Gabbie suggested they move to the bedroom to watch the movie. Once in the bedroom, the group laid down on the bed to watch the movie.

{¶5}    At about 11:30 p.m. Gabbie got up from the bed and went to the bathroom, leaving Appellant alone with A.I.  Gabbie texted Appellant to initiate the threesome with A.I.

{¶6}    Appellant slid next to A.I. and whispered in her ear, "I know you're attracted to me."  Tr. 271.  Appellant expressed a desire to have sex with A.I., and licked her ear. Appellant then stuck his hand down the front of A.I.'s pajama pants, inside her underwear, and began massaging the outside of her vagina.   A.I. forcibly removed Appellant's hand and left the room.  A.I. felt scared and began crying because she was flustered and did not expect the sexual activity to happen.

{¶7}    A.I. spent the night on the couch in the living room.  The next day, Appellant came out of the bedroom and began rubbing A.I.'s feet, continuing to ask if she was attracted to him.  A.I. called her mother to pick her up across the street in the Meijer store parking lot.

{¶8}    After calling the police, A.I. was sent for a sexual assault examination at Grady Hospital. A.I.'s underwear was collected for DNA testing.   Analysis of the underwear showed the presence of the DNA of at least two males, but the evidence was not of sufficient quality for comparison to any one individual.

{¶9}    Delaware police seized Appellant's cell phone.  On April 11, 2021, prior to the incident with A.I., Appellant ran the following searches in his internet browser:  sexual pressure; how to intimidate girls sexually; my husband is obsessed with me sexually; what percentage of women report sexual assault; obsessive love; my husband pressures me sexually; obsessive love disorder: symptoms, what it is, causes, and more; and how do girls react to sexual assault.

**{¶10}** Appellant was indicted by the grand jury on one count of gross sexual imposition. The case proceeded to jury trial in the Delaware County Common Pleas Court. Following trial, Appellant was convicted as charged, and sentenced to a term of community control not to exceed three years.

**{¶11}** It is from the August 30, 2021 judgment of conviction and sentence Appellant prosecutes this appeal, assigning as error:

I. THE TRIAL COURT ERRED BY FAILING TO GRANT A JUDGMENT OF ACQUITTAL, PURSUANT TO CRIM. R. 29(A) ON THE GROSS SEXUAL IMPOSITION CHARGE, AND THEREAFTER ENTERING A JUDGMENT OF CONVICTION OF THAT OFFENSE AS THE CHARGE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

II. THE JURY VERDICT OF GUILTY ON THE GROSS SEXUAL IMPOSITION CHARGE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

III. DEFENDANT-APPELLANT WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE I, SECTION 10.

IV. DEFENDANT-APPELLANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FEDERAL AND

STATE CONSTITUTIONS BY THE CUMULATIVE EFFECT OF THE NUMEROUS ERRORS IN THIS CASE.


I.

{¶12} In his first assignment of error, Appellant argues the judgment of conviction is not supported by sufficient evidence and the trial court therefore erred in failing to grant his Crim. R. 29 motion for a judgment of acquittal. He specifically argues the State failed to prove the element of force necessary for a conviction of gross sexual imposition.

{¶13} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶14} A Crim. R. 29(A) motion for acquittal tests the sufficiency of the evidence presented at trial. *State v. Blue*, 5th Dist. Stark No. 2001CA00250, 2002–Ohio–351, *citing State v. Williams*, 74 Ohio St.3d 569, 576, 1996–Ohio–91, 660 N.E.2d 724; State v. Miley, 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist. 1996). Crim. R. 29(A) allows a trial court to enter a judgment of acquittal when the state's evidence is insufficient to sustain a conviction. A trial court should not sustain a Crim. R. 29 motion for acquittal unless, after viewing the evidence in a light most favorable to the state, the court finds no rational finder of fact could find the essential elements of the charge proven beyond a reasonable doubt. *State v. Franklin*, 5th Dist. Stark No. 2007–CA–00022, 2007–Ohio–4649 at ¶ 12, citing State v. Dennis, 79 Ohio St.3d 421, 1997–Ohio–372, 683 N.E.2d 1096.

**{¶15}** Appellant was convicted of gross sexual imposition as defined by R.C. 2907.05(A)(1):

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

**{¶16}** R.C. 2907.05 (A)(1) requires the victim's submission to sexual contact to be obtained by force or threat of force. The force element needed to prove the offense of gross sexual imposition is the same as it is for rape. State v. *Riggs*, 10th Dist. Franklin Nos. 04AP-1279, 04AP1280, 2005-Ohio-5244 ¶120. In *State v. Eskridge*, 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304 (1988), the Supreme Court of Ohio found the amount of force required to meet this requirement varies depending on the age of the victim and the relationship between the victim and the defendant. *Id.* at ¶ 58.  However, some amount of force must be proven beyond the force inherent in the crime itself.  *State v. Dye*, 82 Ohio St.3d 323, 327, 695 N.E.2d 763, 766 (1998).[1]

**{¶17}** Numerous cases in Ohio have found the element of force demonstrated where a victim and the victim's clothing was manipulated during the sexual contact. *See,*

---

[1] While *Eskridge* and *Dye* and their progeny recognize a subtle, inherent psychological element of force present when the victim is a minor child and the perpetrator is a parent or authority figure, the instant case involves an adult victim and a perpetrator who is not an authority figure.  Further, the trial court did not instruct the jury on psychological force, but rather instructed only on the element of physical force.

*e.g., State v. Graves*, 8th Dist. Cuyahoga App. No. 88845, 2007-Ohio-5430 (26-year-old's pants pulled down and legs separated to facilitate vaginal intercourse); *State v. Lillard* (May 23, 1996), Cuyahoga App. No. 69242, 1996WL273781 (appellant pulled up sleeping 16-year-old victim's robe and spread her legs in order to look into her vagina with a flashlight); *State v. Green*, 5th Dist. Delaware No. 01CA-A-12-067, 2002-Ohio-3949 (relocating sleeping 16-year-old victim to chair and pulling down her pants and underwear sufficient to demonstrate force); *State v. Johnson,* 2nd Dist. Greene No. 2009-CA-38, 2010-Ohio-2920 (moving victim's shorts and underwear aside, holding her down with his hand and failing to stop when asked until victim elbowed defendant off sufficient showing of force); *State v. H.H.*, 10th Dist. Franklin No. 10AP-1126, 2011-Ohio-6660 (carrying sleeping granddaughter to the bed and removing her pants and underwear sufficient to constitute force).

{¶18} The Third District has criticized the reduced level of force required by the Eighth District cases cited above when a sleeping victim is involved, discussing the distinction between sexual crimes which require proof of force and those which do not:

> We decline to adopt the Eighth District's reduced level of force for sleeping victims for several reasons. To begin with, the reasoning in the Eighth District's line of cases stems from *Eskridge* where the victim was the offender's four-year-old daughter.

> The Ohio Supreme Court has limited the application of *Eskridge's* reduced levels of force to situations where the offender is the victim's parent or holds a similar position of authority over a child-victim. *Schaim*, 65 Ohio

St.3d at 55, 600 N.E.2d 661; *Dye*, 82 Ohio St.3d at 329, 695 N.E.2d 763. Other districts that have applied a reduced level of force for sleeping victims have done so only in cases involving child-victims. *State v. Johnson*, 2nd Dist. No. 2009–CA–38, 2010–Ohio–2920, ¶ 18 (16 year-old); *State v. Burton*, 4th Dist. No. 05CA3, 2007–Ohio–1660, ¶ 38 (10–13 years old); *State v. Green*, 5th Dist. No. 01CA–A–12–067, 2002–Ohio–3949, ¶ 61 (16 year-old); *State v. H.H.,* 10th Dist. No. 10AP–1126, 2011–Ohio–6660, ¶ 12 (17 year-old); *State v. Rutan*, 10th Dist. No. 97APA03–389 (Dec. 16, 1997), (14–15 year-olds). The Eighth District's focus upon "force necessary to facilitate the act" also ignores the fact that "the statute requires that some amount of force must be proven beyond that force inherent in the crime itself." *Clark*, 2008–Ohio–3358, at ¶ 17; *Dye*, 82 Ohio St.3d at 327, 695 N.E.2d 763. The statute requires that the victim submit to the sexual contact by force or threat of force. R.C. 2907.05(A)(1). This requires more than "force necessary to facilitate the act" but force or threat of force sufficient to overcome the will of the victim. *Eskridge*, 38 Ohio St.3d at 58–59, 526 N.E.2d 304.

Since the Eighth District's interpretation of the element of force in sleeping-victim cases "fails to recognize the requirement that the force or threat of force must be sufficient to overcome the will of the victim," it blurs the distinction between sex offenses requiring force and sex offenses not requiring force. *State v. Henry*, 3d Dist. No. 13–08–10, 2009–Ohio–3535, ¶ 32. The General Assembly has provided specific criminal offenses to protect

victims, like S.D., "whose ability to resist * * * is substantially impaired because of a * * * physical condition" or who submit because they are "unaware that the act is being committed." See R.C. 2907.02(A)(1)(c); 2907.05(A)(5); 2907.03(A)(3). The Court of Appeals has concluded that sleeping is a 'physical condition' that substantially impairs a victim's ability to resist for purposes of rape in violation of R.C. 2907.02(A)(1)(c). *Graves*, 2007–Ohio–5430, at ¶ 22, citing *State v. Younger*, 8th Dist. No. 86235, 2006–Ohio–296; *State v. Wright*, 9th Dist. No. 03CA0057–M, 2004–Ohio–603, ¶ 6; *H.H.*, 2011–Ohio–6660, at ¶ 10. For the same reason, an offender may also be convicted of committing gross sexual imposition against a sleeping victim under R.C. 2907.05(A)(5). See *id*. Similarly, an offender may be convicted of committing sexual battery or sexual imposition against a sleeping victim under R.C. 2907.03(A)(2), (3) or R.C. 2907.06(A)(3). *Henry*, 2009–Ohio–3535, at ¶ 33, citing *State v. Lindsay*, 3d Dist. No. 8–06–24, 2007–Ohio–4490; *State v. Antoline*, 9th Dist. No. 02CA008100, 2003–Ohio–1130; *Wright*, 2004–Ohio–603; *State v. Byrd,* 8th Dist. No. 82145, 2003–Ohio–3958, ¶ 23. By diminishing R.C. 2907.05(A)(1)' s element of force to mere manipulation of a sleeping victim's body or clothing, the Eighth District usurps the General Assembly's power to define and codify criminal offenses and to treat offenders differently depending upon the nature of their conduct.

{¶19} *State v. Wine*, 3rd Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶¶ 49-50, *aff'd*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶¶ 49-50.

{¶20} Recently, this Court found the State failed to prove the element of force required for gross sexual imposition where the defendant reached inside the shorts of his sixteen-year-old niece while she was sleeping:

Against that background, even if we were to adopt the Eighth District's reduced level of force for initially sleeping victims, we find the facts here are distinguishable from any of the above-mentioned sleeping child-victim cases which appear to require manipulation of clothing plus something more, such as relocation of the victim or repositioning of the victim's limbs. While appellant did manipulate Z.M.'s clothing, as soon as Z.M. became aware of the nature of appellant's conduct, she got up and left the room. T. 140. Appellant did not tell Z.M. to do or refrain from doing anything, did not restrain her in any way nor reposition or relocate her body in any way, and did not prevent Z.M. from leaving the room. He did not hold Z.M. down in order to commit the act of touching Z.M. While we find appellant's conduct despicable, we nonetheless find the evidence presented by the state insufficient to prove force or threat of force. Additionally, while appellant's conduct would meet the elements of gross sexual imposition under R.C. 2907.05(A)(5) or sexual imposition pursuant to R.C. 2907.06(A)(1), the state did not charge under these code sections

nor request to amend the indictment nor request a jury instruction for the lesser-included offense of sexual imposition.

**{¶21}** *State v. Moore*, 5th Dist. Morgan No. 21AA0003, 2022-Ohio-2349, ¶38.

**{¶22}** The instant case involves an adult victim, who was not asleep. There was no evidence Appellant removed A.I.'s clothing or manipulated her clothing beyond reaching inside her pajama pants and underwear. Appellant did not tell the victim to do anything or refrain from doing anything, and did not threaten her in any way if she failed to comply. Appellant did not move or manipulate the victim herself, or any of her limbs. There was no testimony Appellant held her down in order to commit the act of touching her. While A.I. testified she forcibly removed Appellant's hand from inside her pajama pants, there is no evidence he struggled with her to continue touching her; rather, she was able to leave the room without interference from Appellant. Although A.I. was flustered, crying, and scared because she did not expect the touching to happen, there is no evidence in the record Appellant employed any force or threat of force beyond the force of the act itself, which is legally insufficient to meet the "force" element of the crime of gross sexual imposition. We find the evidence legally insufficient to convict Appellant of the crime of gross sexual imposition.

**{¶23}** However, in contrast to *Moore*, *supra*, in the instant case the trial court did instruct the jury on the lesser-included offense of sexual imposition. The Ohio Supreme Court has recently restated when there is insufficient evidence to sustain a conviction for one crime, but sufficient evidence to sustain a lesser included offense of that crime, Ohio law permits a court to modify the verdict accordingly, without ordering a new trial. *State*

*v. Smith*, 2022-Ohio-269, ¶12, *citing* Crim.R. 33(A)(4); R.C. 2945.79(D); *State v. Robinson*, 161 Ohio St. 213, 118 N.E.2d 517 (1954), paragraph one of the syllabus. In such a case, the trial court can modify its judgment to reflect the guilty verdict on the lesser included offense. *Id.* at ¶13.

**{¶24}** The jury was instructed on sexual imposition as defined by R.C. 2907.06(A)(1):

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

> (1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

**{¶25}** In the instant case, the victim testified Appellant stuck his hand inside her pajama pants and began massaging her vaginal area on the outside. The State presented evidence in the form of text messages between Appellant and Gabbie which established Appellant was aware A.I. was not interested in the threesome they had previously discussed, and was "weirded out" by Appellant. We find the evidence was sufficient from which the jury could find Appellant was guilty of sexual imposition.

**{¶26}** Because we find there was insufficient evidence to demonstrate the element of force required to prove gross sexual imposition, the first assignment of error is sustained. Because, however, there was sufficient evidence to sustain a conviction for

sexual imposition, a lesser included offense of gross sexual imposition, we remand this matter to the trial court to modify Appellant's conviction and to resentence him accordingly.

II.

{¶27}  In his second assignment of error, Appellant argues the judgment convicting him of gross sexual imposition is against the manifest weight of the evidence.  This assignment of error is rendered moot based on our ruling on Appellant's first assignment of error.

III.

{¶28}  In his third assignment of error, Appellant argues his trial counsel was ineffective for failing to call his own expert to testify the source of the male DNA found in A.I.'s underwear could have been the result of cohabitating with other males.

{¶29}  A properly licensed attorney is presumed competent. *State v. Hamblin,* 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different.   *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).  In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  *Id.*

{¶30} Haydee Lara, a forensic DNA analyst at the Ohio Bureau of Criminal Investigation, testified it is possible to have male DNA on your clothing if you live with a

male, and DNA can be transferred in the laundry or in a clothes hamper. We find Appellant has not demonstrated calling his own expert witness to testify to substantially the same thing would have changed the result of the proceeding.

{¶31} The third assignment of error is overruled.

IV.

{¶32} In his fourth assignment of error, Appellant argues the cumulative effect of the errors he has raised in assignments of error one through three deprived him of a fair trial. We find this claim is rendered moot by our finding of reversible error on his first assignment of error.

{¶33} Appellant's conviction and sentence for gross sexual imposition is vacated. Because, however, there was sufficient evidence to sustain a conviction for sexual imposition, a lesser included offense of gross sexual imposition, we remand this matter to the trial court to modify Appellant's conviction and to resentence him accordingly.


By: Hoffman, J.
Gwin, P.J. and
Wise, John, J. concur