[Cite as *In re D.G.*, 2023-Ohio-3859.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                 |   |                          |
|-----------------|---|--------------------------|
|                 |   | JUDGES:                  |
| IN RE: D.G.     | : | Hon. W. Scott Gwin, P.J. |
|                 | : | Hon. Patricia A. Delaney, J. |
|                 | : | Hon. Andrew J. King, J.  |
|                 | : |                          |
|                 | : |                          |
|                 | : |                          |
|                 | : | Case No. 2023 CA 00019   |
|                 | : |                          |
|                 | : |                          |
|                 | : | OPINION                  |

CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
                             Court of Common Pleas, Juvenile Division,
                             Case No. 2022-JCR-00467

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      October 23, 2023

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

KYLE L. STONE                         D. COLEMAN BOND
Prosecuting Attorney                  116 Cleveland Ave. N.W.
BY: VICKI L. DESANTIS                 Suite 600
Assistant Prosecutor                  Canton, OH 44702
110 Central Plaza South, Ste. 510
Canton, OH 44702

*Gwin, P.J.*

**{¶1}** Appellant D.G., a juvenile, appeals the judgment of the Stark County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child for committing the offense gross sexual imposition. Appellee is the State of Ohio.

*Facts & Procedural History*

**{¶2}** Appellee filed a complaint against appellant on April 14, 2022, alleging appellant was a delinquent child due to a violation of R.C. 2907.05(A)(1), gross sexual imposition.

**{¶3}** The first day of trial was held on July 21, 2022. At the conclusion of the first day of trial, counsel for appellant made a Criminal Rule 29 motion for acquittal. The magistrate denied the motion. Because testimony was not completed, a second day of trial was held on September 13, 2022.

**{¶4}** The following facts are adduced from the bench trial before the juvenile court. At the time of these events, appellant was sixteen years old. J.R., the alleged victim, was also sixteen years old. The trial consisted of the testimony of appellant, the victim's mother, Alissa Edgein from Akron Children's Hospital, appellant's father, and Michelle Mitchell from Stark County Children's Services.

**{¶5}** Appellant and J.R. are cousins and, prior to this incident, were friends. On July 4, 2021, both appellant and J.R. went to a family cookout at an uncle's house. Both appellant and the victim testified they were alone together in the living room for a period of time. J.R. testified that, throughout this interaction, no one else came into the room and no one else was nearby.

{¶6} J.R. testified that she was braiding appellant's hair, as he sat on the floor in front of her. At some point, appellant moved onto the couch. At that point, appellant took J.R.'s phone and looked up something pornographic. J.R. tried to get her phone back, but appellant kept pulling it away. J.R. testified, "then he started to grope me here on my breasts and then started to make his way down to my private area." When he touched her breasts, appellant was using his hand. J.R. confirmed that appellant touched her vagina with his hand underneath her clothing.

{¶7} As appellant was touching her, J.R. "was saying, no, stop." J.R. was not yelling when she said "no," but said it loud enough for appellant to hear her. Appellant asked J.R. "to kiss him and [she] said no." Appellant then stood up and tried to get J.R. to touch him as he was taking his pants off. Appellant exposed his penis to J.R. J.R. testified that appellant then "pushed [her] by the hand," and made her hand touch his penis. J.R. stated she "kept saying, no, to stop. I said no, stop, and that we were cousins." J.R. testified appellant did not listen to her, and he actually put her hand on his penis. Appellant finally stopped, but not until after he forcibly took her hand and put it on his penis. When asked why she did not run away, J.R. stated, "because I was scared. I felt like I couldn't move. I was too scared to move."

{¶8} J.R. made a police report the next day and had a medical evaluation. She has not seen appellant since the incident. J.R. went to counseling for several months after the incident.

{¶9} S.R., the victim's mother, confirmed appellant and the victim were alone together in the family room. S.R. described the set-up in the home, i.e., if someone is standing in the kitchen, that person could not look and see into the living room because

it is an obstructed view. Someone would have to walk to the door of the living room to see inside the living room. She testified that J.R. was quiet on the way home. After they returned home, J.R. told her mother what happened. They made a police report the next day. J.R. did not want to return to her uncle's home the next day to celebrate her grandfather's birthday. S.R. described J.R. as being much quieter and more reserved after the incident. Further, J.R. was in counseling for several months after the incident.

{¶10} Alissa Edgein, a nurse practitioner at Akron Children's Hospital, diagnosed J.R.'s case as a child sexual abuse case. She referred J.R. to counseling.

{¶11} Michelle Mitchell ("Mitchell") from Stark County Children's Services, reviewed J.R.'s forensic interview. Mitchell testified the initial disclosures made by J.R. were consistent with the disclosures J.R. made during the forensic interview. Specifically, during the forensic interview, J.R. stated as follows: she was alone in the room with appellant, appellant asked to see J.R.'s phone, appellant got up and sat next to her, appellant showed J.R. a pornographic video on her phone, appellant groped her breasts, appellant went down J.R.'s pants with his hands, appellant grabbed J.R.'s hand and made her touch his penis, appellant got up and walked to the corner where he could not be seen by others, appellant pulled out his penis and asked J.R. to suck it and J.R. refused, and J.R. told appellant to stop several times.

{¶12} Appellant's father testified that there were many people in the kitchen the whole time appellant and J.R. were sitting in the living room. Further, that one can hear conversations in the kitchen from the living room because it is all open. Appellant's father stated it was not possible for appellant and J.R. to have been alone after 10:30 p.m., because he and appellant left by then.

{¶13} Appellant testified to the interaction between himself and J.R. Appellant stated he was sitting on the floor and J.R. was sitting on the couch, braiding his hair. J.R. was on her phone, and appellant was starting to fall asleep. Appellant stated at that point, J.R. put her hand on his thigh and said "you can touch me," so appellant put his hand on her thigh. Appellant testified that J.R. never told him to stop, and never stood up. At that point, appellant thought he heard someone coming, so he tried to get back up, but instead sat back down. Appellant was afraid he would get in trouble because "it is not normal to do stuff like that." Appellant was afraid J.R. would say something about what happened, and he would be blamed. Appellant testified the touching of J.R.'s thigh was consensual, and J.R. never told him to stop. Appellant denied exposing his penis to J.R.

{¶14} After the trial, the magistrate found appellant to be a delinquent juvenile. Appellant filed objections to the magistrate's decision on September 22, 2022. The trial court set the objections for hearing. Appellant supplemented his objections to the magistrate's decision on November 8, 2022.

{¶15} On November 9, 2022, the trial court issued a judgment entry. The trial court overruled the fourth and sixth objections to the magistrate's decision. However, the trial court sustained appellant's first and second objections, finding: the magistrate committed error in denying appellant the opportunity to play a portion of the victim's forensic interview for purposes of impeachment, and the magistrate committed error by refusing to permit appellant to call the forensic interviewer as a witness at trial. Accordingly, the trial court remanded the matter to the magistrate. The magistrate conducted an additional hearing on November 29, 2022. During the November hearing,

portions of the forensic video were played and the forensic interviewer was called as a witness.

{¶16} The magistrate issued an entry on November 29, 2022, finding appellant delinquent. A disposition hearing was set for February 6, 2023. At the disposition hearing on February 6, 2023, the trial court ordered appellant to serve 90 days in the Stark County Jail with 19 days credited and 71 days suspended, and commitment to DYS for a minimum of six months, with the DYS commitment stayed on the following conditions: good behavior, abide by local, state, and federal laws, and abide by the terms of his probation. The trial court also designated appellant as a Tier I sex offender. The trial court issued a judgment entry memorializing its findings on February 6, 2023.

{¶17} Appellant appeals the February 6, 2023 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, and assigns the following as error:

{¶18} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED.

{¶19} "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

I. & II.

{¶20} Appellant contends his conviction for gross sexual imposition is against the manifest weight and sufficiency of the evidence.

{¶21} On review for sufficiency, the reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether,

after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime prove beyond a reasonable doubt." *Id*, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶22}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist. 1983); see also *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶23}** In his first assignment of error, appellant contends appellee failed to present sufficient evidence that appellant purposely compelled J.R. to engage in sexual contact by force or threat of force. In his second assignment of error, appellant contends his conviction is against the manifest weight of the evidence because there is no force or threat of force as required by R.C. 2907.05.

**{¶24}** The trial court found appellant guilty of gross sexual imposition, a violation of R.C. 2907.05(A)(1), which states:

(A) No person shall have sexual contact with another, not the spouse of the offender, cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force * * *.

{¶25} R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation, the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶26} Appellant argues appellee failed to prove the element of force necessary for a conviction of gross sexual imposition.

{¶27} The term "force" is defined by R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2907.05(A)(1) requires the victim's submission to sexual contact to be obtained by force or threat of force. *State v. Biggs*, 5th Dist. Delaware No. 21 CAA 09 0048, 2022-Ohio-2481. In *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), the Supreme Court of Ohio found the amount of force required to meet this requirement varies depending on the age of the victim and the relationship between the victim and the defendant. *Id.* However, some amount of force must be proven beyond the force inherent in the crime itself. *State v. Dye*, 82 Ohio St.3d 323, 695 N.E.2d 763 (1998).

{¶28} Upon review of the evidence presented at the trial, we find, when viewed in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that appellant committed the crime of GSI by use or threat of force. The testimony presented at the hearing by the victim alleges appellant forcibly pushed her hand and made her hand touch his penis. The victim testified that she told appellant "no," and did not run or walk away because she was "too scared to move."

{¶29} In addition, appellee presented circumstantial evidence to support the charges. J.R.'s mother testified to her demeanor before and after the incident. Mitchell testified the initial disclosures made by J.R. were consistent with the disclosures J.R. made during the forensic interview. The trial court viewed the forensic interview and J.R.'s testimony. Circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶30} Courts, including this Court, have found sufficient evidence of force where the state presents evidence that the defendant manipulated or repositioned the victim's body during the sexual contact or conduct. *In the Matter of K.S.*, 5th Dist. Fairfield No. 13-CA-21, 2014-Ohio-188 (sufficient evidence of force when defendant pushed the victim's head near his penis); *In re H.M.*, 5th Dist. Licking No. 17-CA-81, 2018-Ohio-2201 (sufficient evidence of force when defendant put victim's hands on his penis); *State v. Steele*, 5th Dist. Delaware No. 2011-CA-110, 2012-Ohio-3777 (sufficient evidence of force when the victim testified that the defendant grabbed her hand and pulled it over to his penis); *State v. Howard*, 2nd Dist. Montgomery No. 26360, 2015-Ohio-3917 (sufficient evidence of force when defendant grabbed victim's wrists and forced her to rub his penis with her hands); *State v. Jones*, 2nd Dist. Montgomery No. 26289, 2015-Ohio-4116 (sufficient evidence of force when the defendant made the victim's hand touch his penis using a pushing motion).

{¶31} Appellant cites this Court's case of *State v. Biggs*, 5th Dist. Delaware No. 21 CAA 09 0048, 2022-Ohio-2481, and the Ninth District Court of Appeals' decision in *State v. Roy*, 9th Dist. Lorain No. 13CA010404, 2014-Ohio-5186, in support of his

argument.  He argues this case is factually similar to those cases in which the appellate courts found there were not sufficient acts of force beyond the sexual contact itself.

{¶32}  However, we find both of these cases to be distinguishable from the instant case.  In *Biggs*, the defendant did not manipulate the victim herself, or any of her limbs.  In this case, J.R. specifically testified that appellant forcibly grabbed her hand and placed it on his penis.  Further, in *Roy*, the adult victim testified that the defendant, a physician, "touched her breasts in a way she had never experienced before," and the victim was unsure if this was for the purpose of medical diagnosis. In this case, J.R. is not an adult.  Further, there was not a doctor-patient relationship between appellant and J.R. Finally, there was no testimony in *Roy* that the defendant manipulated or repositioned the limbs of the victim.

{¶33}  Appellant also contends the testimony of J.R. was contradicted by the testimony of appellant and appellant's father.  Appellant specifically cites the testimony of appellant's father that contradicted the time the victim stated the incident happened (after 10:30 p.m.).  Appellant's father testified he and appellant were gone from the party by 10:30 p.m.  Further, appellant cites the testimony from appellant that he and J.R. mutually touched each other's thighs.

{¶34}  This essentially comes down to a credibility determination between appellee's witnesses and appellant's witnesses.  The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).  The trial court, as the trier of fact in this case, was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  'While the trier of fact may take note of the inconsistencies and

resolve or discount them accordingly * * * such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Nivens*, 10th Dist. Franklin No. 95AP09-1236, 1996 WL 284714 (May 28, 1996). As to appellant's argument that J.R. did nothing to stop the assault, a victim is not required to prove physical resistance for an offender to be guilty of GSI. R.C. 2907.05(D); *State v. Timm*, 5th Dist. Delaware No. 21 CAA 11 0060, 2022-Ohio-3010.

{¶35} We find appellee produced sufficient evidence to prove appellant acted with purpose to compel the victim to engage in sexual contact with appellant by force. Further, we find this is not an "exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The trier of fact was presented with two conflicting versions of events. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, an appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, quoting *State v. Gore*, 131 Ohio App.3d 197, 722 N.E.2d 125 (7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282. The trial court heard and witnessed testimony from both J.R. and appellant.

We find no evidence in the record to support a finding that the trial court lost its way in finding J.R. credible.

**{¶36}** Based on the foregoing, we find the finding of delinquency based upon a violation of R.C. 2907.05(A)(1) is not against the manifest weight or sufficiency of the evidence. Appellant's assignments of error are overruled.

**{¶37}** The February 6, 2023 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, P.J.,

Delaney, J., and

King, J., concur

[Cite as *In re D.G.*, 2023-Ohio-3859.]