[Cite as *State v. Franco*, 2023-Ohio-4653.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

    v.                                       :

ALEX JOEL FRANCO,                  :

    Defendant-Appellant.        :

No. 112669

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, MODIFIED IN PART,
                 AND REMANDED
**RELEASED AND JOURNALIZED:** December 21, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-668857-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Kerry A. Sowul and Glen Ramdhan,
Assistant Prosecuting Attorney, *for appellee.*

Susan J. Moran, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Alex Joel Franco, appeals his convictions for

gross sexual imposition, abduction, domestic violence, and endangering children.

Finding some merit to the appeal, this court affirms in part, modifies in part, and remands the matter to the trial court for resentencing.

{¶ 2} In March 2022, Franco was named in an eight-count indictment charging him with two counts of rape, in violation of R.C. 2907.02(A)(2) (Counts 1 and 2); one count of attempted rape, in violation of R.C. 2923.02/2907.02(A)(2) (Count 3); one count of kidnapping, in violation of R.C. 2905.01(A)(4) (Count 4); two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1) (Counts 5 and 6); one count of domestic violence, in violation of R.C. 2919.25(A) (Count 7); and one count of endangering children, in violation of R.C. 2919.22(A) (Count 8). Franco waived his right to a jury trial, and the case was tried to the bench where the following relevant evidence was presented.

{¶ 3} On the night of March 19, 2022, the victim placed a call for help to her father requesting that he call the police because she believed that Franco, the father of her four children, was going to rape her. Multiple police officers responded, and the state played body camera videos from four of those officers for the court.

{¶ 4} The videos showed the officers at the residence with a few of them standing on the front porch and knocking on Franco's front door, announcing their presence. Other officers walked around the sides of the house. Once the front door opened, the victim, who was naked, emerged and Franco stood next to her with a towel around his waist. The victim excitedly told the officers to come inside the house, but Franco attempted to move the victim out of the door way claiming that she needed to cover herself, and tried to close the door. The officers commanded

Franco to stop, and the victim exited the house onto the porch, pleading with Franco to let the officers inside the house because the children were scared and crying.

{¶ 5} Officer Michael Fragapane testified that the victim appeared frantic when the door opened. He stated that Franco was noncompliant with questioning, and after a physical struggle, he and other officers were able to handcuff Franco, put pants on him, and remove him from the residence.

{¶ 6} The victim testified that she and Franco co-parent four children but had not been romantically involved for over two years. She testified to the following events. Around 8 p.m. on March 19, 2022, the victim drove over to Franco's house with their four children, ages two to eight, for the purpose of picking up a cat. She waited in the car, parked in the driveway with the engine running, but Franco called her on his cell phone telling her that he was having trouble getting the cat. She asked Franco to come outside and sit with the children while she went inside to find the cat. As she approached the door to the residence, Franco walked by her and smacked her buttocks. She immediately told him, "Come on. I told you not to touch me like that." (Tr. 111.) According to the victim, Franco "went from * * * being calm and fine to angry and menacing." She attempted to leave the house, but Franco blocked and locked the front door. She then ran out the back door, but Franco chased her, grabbed her, and brought her back inside. Once he had her inside the house, Franco physically assaulted her, held her down, and pulled off her pants.

{¶ 7} The victim testified that she was nervous and feared for the safety of the children because they were alone outside in the car with the engine running in a

"bad neighborhood." (Tr. 120.) Even though she repeatedly expressed to Franco her concern about their children, he discounted the concerns, assuring that "the kids are fine" (tr. 116), and continued to struggle with her. She told him that she would do whatever he wanted if he brought the children inside the house — "I was just trying to do anything to get him off of me." (Tr. 118-119.) When Franco went outside to retrieve the children, the victim sent an audio message to her father pleading for help and for him to call the police.

{¶ 8} Franco came back into the house with their children and forced the victim into the bathroom. The victim stated she begged him to stop, but he pinned her against the bathroom door, removed her sweatshirt, and attempted to perform oral sex on her. According to the victim, Franco then forced her into the bathtub where he digitally raped her. The attack on the victim ceased when their eight-year-old son told them that someone was at the front door.

{¶ 9} The victim did not seek medical attention, but officers took photographs of the victim's injuries, including bumps, bruises, scratches, and a broken fingernail. The state also introduced photographs taken of Franco that showed scratches to his shoulder and chest area.

{¶ 10} Detective Sabrina Choat met with the victim following the incident. She admitted that she did not recommend to the victim to submit to a SANE evaluation because the victim had showered multiple times. She further admitted that she did not collect any of the victim's clothing because she considered the items contaminated because the victim had mixed the clothing with other laundry.

{¶ 11} Franco's eight-year-old son testified that he was seated outside in the vehicle with his siblings when he heard screaming and yelling and became scared. He stated that while his mom was inside the house, his younger two-year-old brother attempted to wriggle out of his car seat, so he undid his brother's seatbelt. He stated that his father then came outside and brought him and his siblings into the house. According to the child, when the police arrived, he believed they were "robbers," and he went to the bathroom door to tell his parents that someone was at the door. He testified that he had heard his parents yelling at each other before, but this time the police arrived.

{¶ 12} Following the state's case-in-chief, Franco moved for a Crim.R. 29 judgment of acquittal. The trial court agreed with Franco on Count 6, dismissing the gross sexual imposition charge where the state alleged that Franco touched the victim's breasts. According to the court, the victim did not express enough certainty that Franco touched her breasts. (Tr. 377.)

{¶ 13} After the admission of exhibits, the state rested, and Franco did not put forth any defense. The trial court announced its verdict the following day, providing its rationale to the parties, and found Franco not guilty of Counts 1 and 2, both charging rape, and Count 3, charging attempted rape. The court also found Franco not guilty of kidnapping as charged in Count 4, but guilty of the lesser-included offense of abduction, in violation of R.C. 2905.02, and finding that Franco committed the offense with a sexual motivation. The court also found Franco guilty as charged in Count 5 (gross sexual imposition for touching the victim's buttocks),

Count 7 (domestic violence), and Count 8 (endangering children). The trial court sentenced Franco to a total prison term of 18 months.

{¶ 14} Franco now appeals, raising three assignments of error that will be addressed together where appropriate.

## I. Sufficiency of the Evidence

{¶ 15} In his first and third assignments of error, Franco contends that the state presented insufficient evidence to support his convictions for gross sexual imposition and endangering children.

{¶ 16} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Cottingham*, 8th Dist. Cuyahoga No. 109100, 2020-Ohio-4220, ¶ 32. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 17} The state charged Franco in Count 5 of the indictment with gross sexual imposition in violation of R.C. 2907.05(A)(1). The indictment provided that on or about March 19, 2022, Franco

did have sexual contact, to wit: touched buttocks, with [the victim], not his spouse, by purposely compelling [the victim] to submit by force or threat of force.

{¶ 18} R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the * * * buttock * * * for the purpose of sexually arousing or gratifying either person." In addition to proving sexual contact as defined, the state must present some evidence that the defendant compelled the victim to submit by force. "Force" is an element of gross sexual imposition and means "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

{¶ 19} Franco contends that the state presented insufficient evidence to support his conviction for gross sexual imposition because no evidence was presented that Franco smacked the victim on the buttocks for purpose of sexual gratification.

{¶ 20} The state asserts that there was evidence presented that Franco committed other conduct, in addition to smacking the victim's buttocks, which could support a conviction for gross sexual imposition. While this may be true, Count 5 charged Franco with gross sexual imposition for touching the victim's buttocks. The state could have asked the court during trial to amend Count 5 pursuant to Crim.R. 7(D) to conform with the evidence if it believed that the evidence did not support the specific type of sexual contact charged in the indictment. In response to Franco's Crim.R. 29 motion for judgment of acquittal, the state argued that viewing the evidence in favor of the state, it presented sufficient evidence to support the offense

of gross sexual imposition as charged in Count 5 because the victim "testified to [Franco] smacking her on the butt when she came in; that was not welcomed." (Tr. 375-376.) Accordingly, because the state did not move to amend the indictment, it was required to prove beyond a reasonable doubt the allegations and elements of the offense as charged in the indictment. *See State v. Crosky*, 10th Dist. Franklin No. 06AP-655, 2008-Ohio-145, ¶ 62 (state failed to amend indictment to conform with the evidence in a child-rape case; thus it was required to prove sexual conduct as charged in the indictment).

{¶ 21} Upon review of the evidence, we find that the state did not establish the essential elements of gross sexual imposition as charged in Count 5 beyond a reasonable doubt because, at a minimum, the state presented insufficient evidence that Franco purposely compelled the victim to submit to the touch of her buttocks by force.

{¶ 22} The victim testified that Franco smacked her buttocks after she entered Franco's home and walked by him. When asked whether the smack was hard, the victim responded:

> Yeah. Kind — it was kind of playful, like. Like as if we were together or something like that. Just like a pat on the back, hey, you know, just swatting me on my butt. It wasn't like he was hitting me maliciously. It was, I guess, trying to be flirtatious or something like that, to that effect. But it was not welcomed and I asked him not to do that.

(Tr. 111.) The victim did not testify that this single slap was anything but playful or flirtatious, or that Franco compelled her to submit to the offensive touching.

{¶ 23} This court finds that no evidence exists in the record that Franco used any force or threat of force beyond the force of the act itself, which is legally insufficient to meet the "force" element of the crime of gross sexual imposition. *See In re J.W.*, 8th Dist. Cuyahoga No. 109031, 2020-Ohio-4065 (evidence sufficient for gross sexual imposition when defendant placed victim's hand on defendant's penis over top of his pants, but evidence insufficient for gross sexual imposition where the defendant placed his own hand over top of the victim's clothing to touch her thigh and vagina); *see also State v. Biggs*, 2022-Ohio-2481, 192 N.E.3d 1306 (5th Dist.) (insufficient evidence for gross sexual imposition where no evidence of force was presented beyond the act itself).

{¶ 24} In *State v. Dunn*, 8th Dist. Cuyahoga Nos. 112301 and 112916, 2023-Ohio-4413, this court recently considered a case involving a defendant who was convicted of two counts of gross sexual imposition for his conduct of grabbing his neighborhood mail carrier's breast and his neighbor's buttocks. Regarding the count involving the mail carrier, this court found the evidence insufficient to support the offense of gross sexual imposition, but sufficient for sexual imposition, because the defendant did not use any force beyond the act itself, which was grabbing the victim's breast. *Id*. at ¶25. This court reasoned that the state did not prove the element of "force" because the defendant did not manipulate the victim's clothing, did not tell her to do anything or prevent her from doing anything, and did not threaten the victim; the only force used was the act itself. *Id*. at ¶ 27-28.

{¶ 25} Regarding the count naming the defendant's neighbor as the victim, this court upheld the defendant's conviction for gross sexual imposition because even though the defendant only felt the victim's buttocks, sufficient evidence was presented to support an inference of force based on the circumstances surrounding the sexual contact. *Id.* at ¶ 30. This court reasoned that the state proved the element of force because the defendant had previously touched the neighbor in an inappropriate sexual manner in the past by feeling her buttocks while she did yard work. Based on this prior experience, force was inferred when the defendant entered the neighbor's yard this time, talked in a sexual manner toward her, returned to her yard after being guided away by a neighbor, pursued the victim as she tried to escape from him, and upon reaching the victim, touched her buttocks. *Id.* at ¶ 31.

{¶ 26} Much like the mail carrier victim in *Dunn*, the victim in this case testified that Franco's slap to her buttocks was an unwanted touching. Nevertheless, gross sexual imposition pursuant to R.C. 2907.05(A)(1) requires that the victim's submission to sexual contact be obtained by force or threat of force, and the state did not present any evidence that Franco used any force other than the act itself to cause this unwarranted touching. And unlike the neighbor victim in *Dunn*, the victim in this case did not testify that she tried to retreat prior to Franco slapping her buttocks or that he pursued her to engage in that conduct, to allow this court to make an inference of force based on the circumstances surrounding the sexual contact. Accordingly, even viewing the evidence in a light most favorable to the

state, we find that insufficient evidence was presented to support Franco's conviction for gross sexual imposition.

{¶ 27} We find that the evidence is sufficient, however, to support the lesser-included offense of sexual imposition pursuant to R.C. 2907.06(A)(1). "'Sexual imposition is a lesser-included offense of gross sexual imposition because it does not require proof of the additional element of force.'" *J.W.* at ¶ 17, quoting *State v. Roy*, 2014-Ohio-5186, 22 N.E.3d 1112, ¶ 42 (9th Dist.). R.C. 2907.06, the sexual imposition statute, provides in relevant part: "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender knows that the sexual contact is offensive to the other person * * * or is reckless in that regard." R.C. 2907.06(A)(1). *See, e.g., State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621 (sufficient evidence presented to support sexual imposition conviction where the defendant, a stranger to the victim, grabbed the victim's buttocks in a bar).

{¶ 28} The victim testified that as she approached the door to Franco's residence, Franco walked by her and smacked her buttocks. She immediately told him, "Come on. I told you not to touch me like that." Accordingly, the evidence suggests that Franco knew that this contact would be unwelcomed and offensive to the victim. Additionally, the evidence supports that Franco committed the act with the purpose of sexual arousal or gratification. The victim testified that in the days prior to the incident, Franco sent her sexually explicit video- and picture-messages of women's backsides or women "twerking." (Tr. 151.) In the messages, Franco

disregards the victim's expressed lack of interest in these messages and with him. Franco's prior messages coupled with his subsequent conduct of chasing the victim and attempting to engage in further sexual activity suggests that his purpose or motivation for his "flirtatious" slap to the victim's buttocks was for sexual arousal or gratification. Accordingly, viewing the evidence in a light most favorable to the state, sufficient evidence was presented to support the elements of sexual imposition pursuant to R.C. 2907.06(A)(1).

{¶ 29} Merely satisfying the elements of sexual imposition through the victim's testimony, however, is not enough for a conviction. R.C. 2907.06(B) requires the state to present evidence corroborating the victim's testimony. The corroboration requirement, however, "does not mandate proof of the facts which are the very substance of the crime charged." *State v. Economo*, 76 Ohio St.3d 56, 59, 666 N.E.2d 225 (1996). "The corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Slight circumstances or evidence which tends to support the victim's testimony is satisfactory." *Id.* at 60. Courts have traditionally found that the corroboration element is an "easily met burden." *State v. Manolakas*, 8th Dist. Cuyahoga No. 86815, 2006-Ohio-4263, ¶ 11 (corroborating evidence supplements existing evidence that tends to strengthen or confirm); *see also State v. Cole-Walker*, 1st Dist. Hamilton No. C-200038, 2021-Ohio-1507, ¶ 10 (recognizing that "Ohio law sets a low bar for R.C. 2907.06(B) corroboration.").

{¶ 30} In this case, the police were called to Franco's home based on a frantic call the victim placed to her father. When the police arrived and Franco opened the door, the victim was naked in the doorway and Franco had a towel around his waist. The victim begged the police to come inside the home and pleaded with Franco to let the police inside. Once the officers separated the parties and secured the scene, the victim told the officers that Franco slapped her buttocks as she walked by him, and when she told him that he was being disrespectful by doing so, his demeanor changed, causing him to chase her around the house; grab, drag, and carry her back inside the house when she tried to flee; and remove her clothing. The officers testified about their interactions with the victim, and body camera video was admitted into evidence. Based on the foregoing, the state presented sufficient evidence corroborating the victim's testimony that Franco slapped the victim's buttocks and this unwelcomed and offensive touching was the catalyst that caused Franco's subsequent conduct. Accordingly, we find merit to Franco's first assignment of error, but modify his conviction in Count 5, as this court is permitted to do under R.C. 2945.79(D), to sexual imposition as defined in R.C. 2907.06(A)(1).

{¶ 31} In his third assignment of error, Franco contends that insufficient evidence was presented to support his conviction for endangering children because his conduct did not create a substantial risk to the health and safety of his minor children. We disagree.

{¶ 32} Count 8 charged Franco with endangering children, in violation of R.C. 2919.22(A). The indictment accused Franco of recklessly creating a substantial

risk to the health or safety of his minor children by violating a duty of care, protection, or support.

{¶ 33} In this case, the victim testified that the four children, ranging in ages from two to eight, were inside her car with the engine running when Franco agreed to wait outside with the children as she tried to retrieve a cat from inside the house. Instead, he decided to chase the victim throughout the house, grabbing at her, and then dragging her back into the house as she attempted to escape through the back door. The victim testified that she pleaded with him to let her go because their children were outside in the car with the keys in the ignition and the engine running. According to the victim, the neighborhood was not safe for their children to be left alone at night in a running vehicle. Despite the victim's concern and fear that their children were unattended outside, Franco reassured her that their children were "fine."

{¶ 34} The parties' eight-year-old child testified that his youngest brother, age two, was seated in his car seat when they arrived at Franco's house. He stated that his brother attempted to wriggle out of the car seat by sliding under the seat belt, so he undid his brother's seatbelt. He stated that he heard screaming and yelling when he and his siblings were alone in the car. (Tr. 320.) He stated that his father eventually came out to the car and told them to come inside. The child testified that when they entered the house, he did not see his mom, but when his parents were in the bathroom, he heard his mom crying. (Tr. 326.)

{¶ 35} Viewing all of the evidence in favor of the state, we find that a reasonable fact finder could find Franco guilty of endangering children. His third assignment of error is overruled.

## II. Abduction

{¶ 36} In his second assignment of error, Franco contends that his due process rights were denied when the trial court found him guilty of abduction committed with sexual motivation after it found him not guilty of kidnapping for the purpose of engaging in sexual activity. Franco contends that he is not raising a sufficiency-of-the-evidence challenge or arguing that the verdicts are inconsistent; rather, he asks this court "to find that procedurally * * * [the trial court] violated due process to convict him" of abduction when it acquitted him of kidnapping. (Appellant's brief, page 11-12). Franco has not offered any legal support for this argument.

{¶ 37} App.R. 12(B) requires an appellate court to decide an appeal "on its merits on the assignments of error set forth in the briefs under App.R. 16." In turn, App.R. 16 requires appellants to include in their briefs "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(3) and (7). The law is well settled that appellate courts will not address underdeveloped arguments because "'[i]t is not this Court's job to search the record in an effort to ferret out the basis for Appellant's claims.'" *Halliday v. Halliday*, 8th

Dist. Cuyahoga No. 92116, 2010-Ohio-2597, ¶ 17, quoting *State v. Lewis*, 7th Dist. Mahoning No. 01-CA-59, 2002 Ohio 5025, ¶ 79. For this reason alone, this court could summarily overrule the assignment of error.

{¶ 38} This court could also decline to consider the assignment of error because defense counsel arguably invited any error when the trial court found Franco guilty of abduction under R.C. 2905.02(A) and (B). Invited error occurs "when a party has asked the court to take some action later claimed to be erroneous." *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000).

{¶ 39} During his Crim.R. 29 motion, defense counsel posited that the state did not prove kidnapping as charged in Count 4, but that the evidence could support a charge of abduction. "Finally, your Honor, I would ask you to take a look at Count 4, the kidnapping, and if the Court is going to consider that in terms of guilt or the failure to prove guilt beyond a reasonable doubt, that that could go through as an abduction and not as a kidnapping." (Tr. 373-374.) In response, the court "appreciate[d] sort of generally the idea that maybe this seems more like abduction," but when it reviewed the elements of kidnapping, the court stated:

> We've heard that she tried to leave and he wouldn't let her out. He threw her over his shoulder and carried her back into the house, and he did so with purpose of engaging in sexual activity. By all accounts, her allegation is that his purpose was to force her to have sexual conduct with her, sexual activity with her.

(Tr. 375-375.) Accordingly, the trial court denied counsel's motion for acquittal on the kidnapping offense under the Crim.R. 29 legal standard. (Tr. 377.)

{¶ 40} This court concludes that although the state satisfied its burden under a Crim.R. 29 standard and the trial court found that sufficient evidence was presented when viewing the evidence in favor of the state to prove the kidnapping charge, the trial court believed that the state did not satisfy its burden of proving beyond a reasonable doubt that Franco committed the act of kidnapping. Instead, and as initially requested by defense counsel, the court found Franco guilty of the lesser-included offense of abduction. *See State v. Jeffries*, 182 Ohio App.3d 459, 2009-Ohio-2440, 913 N.E.2d 493 (11th Dist.) (conviction of lesser-included offense based on defense-requested jury instruction on the lesser-included offense is deemed invited error). Accordingly, the defense received what it asked for.

{¶ 41} Nevertheless, when looking at the evidence and the elements of both kidnapping under R.C. 2905.01(A)(4) and abduction under R.C. 2905.02(A) and (B), and considering the trial court's lengthy rationale in rendering its verdict and the verdict itself, this court can only reconcile the court's verdict by finding that the court did not find the victim's testimony, alone, sufficient to support the element of "sexual activity." "Sexual activity" is defined as "sexual conduct, sexual contact, or both." R.C. 2907.01(C).

{¶ 42} The court in rendering its verdict was troubled by the lack of corroborating evidence to support the victim's testimony that Franco engaged or attempted to engage in sexual activity with her. (Tr. 458-461) (trial court finding Franco not guilty of both counts of rape, and single count of attempted rape (which both require proof of sexual activity) based on lack of corroborating evidence).

{¶ 43} For Franco to be found guilty of kidnapping as indicted, the state had to prove that Franco "did, by force, threat, or deception, purposely remove [the victim] from the place where she was found or restrain [her liberty] for the purpose of engaging in *sexual activity* * * * with [the victim] against her will." (Emphasis added.) R.C. 2905.01(A)(4). In finding Franco not guilty of rape and attempted rape, the trial court necessarily found that the state did not satisfy its burden of proving beyond a reasonable doubt that sexual activity occurred or was attempted; therefore it is not surprising that the trial court found Franco not guilty of kidnapping.

{¶ 44} The trial court found, however, that the state proved the lesser-included offense of abduction. R.C. 2905.02(A) provides, in relevant part, that "no person * * * shall knowingly * * * (1) by force or threat, remove another from the place where the other is found; or (2) by force or threat, restrain the liberty of another under circumstances that create a risk of physical harm to the victim or place the other person in fear." Additionally, subsection (B) provides that "no person, with a sexual motivation, shall violate division (A) of this section." The trial court did not specify which subsection — (A)(1) or (A)(2) — upon which it found Franco guilty, but concluded that Franco acted with sexual motivation when he committed the act of abduction. "'Sexual motivation' means with a purpose to gratify the sexual needs or desires of the offender." R.C. 2971.01(J).

{¶ 45} "Sexual activity" is not "sexual motivation" because both have been specifically defined by the legislature, and neither includes the other. A person can

engage in conduct with a purpose to gratify their sexual needs or desires without engaging in sexual activity as defined under the law. Proof of a sexual gratification purpose does not require direct evidence of arousal or gratification. A "trier of fact may infer that a defendant was motivated by a desire for sexual arousal or gratification from the totality of the circumstances." *State v. Edwards*, 8th Dist. Cuyahoga No. 81351, 2003-Ohio-998, ¶ 22, citing *State v. Oddi*, 5th Dist. Delaware No. 02CAA01005, 2002-Ohio-5926.

{¶ 46} In relation to this case, although the court found that the state did not prove beyond a reasonable doubt that Franco engaged in sexual activity with the victim, or that his purpose was to engage in sexual activity, the court believed beyond a reasonable doubt that he acted with a sexual motivation. Based on the general arguments made by Franco, the likelihood that counsel invited the trial court to find him guilty of abduction, and our conclusion that the trial court's verdict does not present a due process violation, we overrule Franco's second assignment of error.

{¶ 47} Judgment affirmed in part, modified in part, and remanded for resentencing on Count 5, as modified to sexual imposition under R.C. 2907.06(A)(1), a third-degree misdemeanor.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, in part, any bail pending appeal is terminated.

Case remanded to the trial court for resentencing on Count 5 and execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, A.J., and
MICHAEL JOHN RYAN, J., CONCUR