JOURNAL AND OPINION
{¶ 1} Defendant-appellant Ralph DeLuca appeals his gross sexual imposition convictions, raising six assignments for our review. For the reasons that follow, we vacate appellant's convictions on sufficiency of the evidence grounds.
 {¶ 2} Appellant was indicted by a Cuyahoga County Grand Jury on two counts of gross sexual imposition, felonies of the fourth degree in violation of R.C. 2907.05(A)(1). The case proceeded to a jury trial. At the conclusion of the State's case, the defense made a Crim.R. 29 motion for acquittal, which was denied. The defense rested without presenting any evidence. The jury found appellant guilty of both counts. Appellant was classified as a sexually oriented offender and sentenced to four years of community control sanctions.
 {¶ 3} The evidence at trial established that appellant is a certified public accountant who operates his business out of EZ Tax on Ridge Road in Parma, Ohio. The business was a converted house, and appellant's office was on the first floor. The alleged victim, Michelle Roppel, and her husband, Greg Roppel, had been clients of appellant for some twenty years. On Friday, February 18, 2005, the Roppels met with appellant at the business to prepare their 2004 income taxes. As was their custom, upon entering appellant's office, Greg shook appellant's hand and Michelle gave appellant a "friendship hug." After some small talk, the three went about preparing the Roppel's taxes. *Page 3 
 {¶ 4} After approximately 45 minutes of working, Greg had to use the restroom. Appellant got up from his desk and directed Greg to the bathroom, which was upstairs. Michelle testified that as appellant was heading back to his desk he asked her for another hug, and she got up walked over to him and gave him a hug. As they were hugging, appellant slid his hands down her pants and underpants and squeezed her buttocks. Michelle testified that appellant then slid his hands up her sides, pulled up her shirt and bra, and sucked on her breasts for about 15 seconds. Michelle explained that the encounter ended when she pushed appellant away, and that appellant laughed and said that he had been waiting twenty years to do that.
 {¶ 5} Michelle testified that the whole incident lasted approximately two minutes and that appellant did not use any force to put his hands down her pants, up her shirt, or to pull her bra up.[1] None of her clothing was ripped. She testified that neither she nor appellant said anything during the encounter.
 {¶ 6} Michelle rearranged her clothes, and she and appellant took their respective seats. Greg then returned from the restroom. Michelle explained that she was in a state of "shock" during and after the incident, and when Greg returned and they resumed working on the taxes, she was unable to participate. Michelle did not say anything about the incident and they continued working on their taxes for at least another half hour. Michelle did not say anything to Greg after they left *Page 4 
appellant's office or anytime over the weekend because she was shocked and embarrassed and thought Greg would get too upset.
 {¶ 7} Michelle testified that on Monday, February 21, she received a phone call at work from appellant, who told her that he hoped he would not have to wait another 25 years to do that again. Michelle told appellant that she did not like the conversation. Appellant then asked for some additional information he needed to complete the taxes, and Michelle told him that she would get it to him. At the end of the work day, Michelle told a co-worker, Tamera Algee, with whom she car pooled, about the incident. At home that evening, Michelle told Greg that appellant had touched her buttocks. Michelle explained that she did not tell Greg about appellant sucking her breasts because she was afraid that if he knew the whole truth, he would hurt appellant. Greg was very angry and called an attorney to see how they should proceed.
 {¶ 8} The following day, Tuesday, February 22, Michelle told two other co-workers, Lisa Speckman and Miela Haverdale, about the incident. Michelle decided to call appellant, and Algee, Speckman and Haverdale listened in and attempted unsuccessfully to tape the conversation. Upon reaching appellant, Michelle told him that she had the information he needed for the completion of the taxes. Appellant asked her if she could personally bring it to him, and she said no. Appellant then told her to fax it to him. *Page 5 
 {¶ 9} On Wednesday, February 23, Michelle, who is bipolar and had been treating for a number of years prior to this incident with a counselor and psychiatrist, saw her counselor. Michelle testified that she had not been to her counselor for three months prior to this incident. After her session with her counselor, Michelle told Greg about the entire incident. Greg was very angry and drove her from the counselor's office to the Parma police department. The investigating detective, Daniel Ciryak, decided to have Michelle place two controlled calls to appellant, in the hopes of obtaining an admission or denial because of the lack of evidence. Neither call produced an admission or denial.[2]
Greg testified that when he went to the restroom while at appellant's office, he was gone no more than three minutes. He explained that as he was coming back from the restroom, he heard appellant laughing and noticed when he reentered appellant's office that Michelle had her head down. He did not note Michelle's clothing to be disheveled. Greg further testified that, as they finished working on their taxes, Michelle was not responding to appellant, as she had done prior to him going to the restroom. On the way home, Michelle told Greg that she was just tired. Greg testified that he noticed that weekend that Michelle was more quiet and reserved than usual. Greg explained that about four to five months after the incident, he contacted an attorney to file a civil suit to seek compensation for Michelle's medical bills. *Page 6 
 {¶ 10} In his third assignment of error, appellant contends that the trial court erred in denying his Crim.R. 29 motion for acquittal because the State failed to establish the element of force needed for gross sexual imposition. We agree.
 {¶ 11} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." "An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact." State v. Watts, Cuyahoga App. No. 82601, 2003-Ohio-6480, citing State v. Jenks (1991),61 Ohio St.3d 259, 273, 574 N.E.2d 492. "Sufficiency is a test of adequacy." State v.Thompkins, 78 Ohio St.3d 380, 386-387, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 12} Under this standard, an appellate court does not conduct an exhaustive review of the record, or a comparative weighing of competing evidence, or speculation as to the credibility of any witnesses. Instead, the appellate court presumptively "view[s] the evidence in a light most favorable to the prosecution." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492. "The weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts."State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. *Page 7 
 {¶ 13} R.C. 2907.05(A)(1), governing gross sexual imposition, provides in pertinent part as follows:
 {¶ 14} "(A) No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:
 {¶ 15} "(1) The offender purposely compels the other person * * * to submit by force or threat of force."
 {¶ 16} R.C. 2901.01(A)(1) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." A defendant purposely compels his victim to submit by force or threat of force when he uses physical force against the victim, or creates the belief that physical force will be used if the victim does not submit. State v. Schaim, 65 Ohio St.3d 51, 55, 1992-Ohio-31,600 N.E.2d 661.
 {¶ 17} Here, Michelle never testified that appellant used physical force against her or made her believe that he would use physical force against her if she did not submit. In fact, Michelle specifically testified that appellant did not use force in putting his hands down her pants or up her shirt and pulling up her bra. The encounter started with appellant asking for another hug, and Michelle voluntarily got up and walked over to where he was to give him one. Appellant did not say anything to Michelle, except at the conclusion of the incident, when he allegedly said that he had been waiting some years to do that. Michelle did not say anything to appellant. When Michelle pushed appellant away, the encounter ended. Greg returned and, *Page 8 
although he testified that Michelle did not participate in the remainder of the meeting, he did not observe anything else unusual. Police attempts to gather more evidence (in the form of an admission) from appellant were unsuccessful.
 {¶ 18} Based upon this evidence, even construing it in the light most favorable to the State as we are required to do, we find it insufficient to support the "force" element necessary for the gross sexual imposition convictions.
 {¶ 19} Accordingly, appellant's third assignment of error is well taken.
 {¶ 20} In his fifth assignment of error, appellant contends that the trial court erred by not instructing the jury on the lesser included offense of sexual imposition. We disagree.
 {¶ 21} In State v. Deem (1988), 40 Ohio St. 3d 205, 209,533 N.E.2d 294, the Supreme Court of Ohio explained:
 {¶ 22} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense."
 {¶ 23} Unlike the offense of gross sexual imposition, the offense of sexual imposition does not include a "force or threat of force" element. See R.C. 2907.06. It has been held that sexual imposition is a lesser included offense of gross sexual imposition. State v. Martin (Dec. 2, 1994), Ashtabula App. No. 93-A-1830. *Page 9 
However, even though an offense may be a lesser included offense of another, "a charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988), 40 Ohio St. 3d 213, 216,533 N.E.2d 286.
 {¶ 24} R.C. 2907.06(B) provides that a defendant cannot be convicted of sexual imposition "solely upon the victim's testimony unsupported by other evidence." The corroboration requirement of R.C. 2907.06(B) is a threshold inquiry of legal sufficiency to be determined by the trial court and is not a question of proof for the factfinder. State v.Economo, 76 Ohio St.3d 56, 1996-Ohio-426, 666 N.E.2d 225.
 {¶ 25} Here, the trial court properly determined that if a lesser included instruction of sexual imposition were given, appellant would be entitled to a directed verdict, as there was no corroboration. Accordingly, the court did not err by refusing to instruct the jury on sexual imposition and appellant's fifth assignment of error is overruled.
 {¶ 26} The remaining assignments of error are rendered moot and will not be considered. See App.R. 12(A)(1)(c). The convictions are vacated and appellant is ordered discharged.
It is ordered that appellant recover from appellee costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 10 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and MELODY J. STEWART, J., CONCUR
[1] When specifically questioned about the use of force, Michelle indicated "[n]o force."
[2] On one tape appellant said "you kissed me," and on the other he said "spontaneous combustion. We came at each other like two freight trains." *Page 1