[Cite as *In re J.W.*, 2020-Ohio-4065.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE J.W.                                          :

A Minor Child                                       :                    No. 109031

                                                    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; MODIFIED IN PART;
AND REMANDED
**RELEASED AND JOURNALIZED:** August 13, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 19100239

---

### *Appearances:*

Susan J. Moran, *for defendant-appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Eric Collins, Assistant Prosecuting
Attorney, *for plaintiff-appellee.*

SEAN C. GALLAGHER, J.:

{¶ 1} Defendant-appellant J.W. appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), that adjudicated him delinquent of three counts of gross sexual imposition and classified him as a Tier II sex offender/child-victim offender registrant. After reviewing the

entire record, we affirm the adjudication of delinquent on Count 3 for gross sexual imposition; we modify the adjudication of delinquent on Counts 1 and 2 to the lesser-included offense of sexual imposition, and we remand for redisposition; and we affirm J.W.'s classification as a Tier II sex offender/child-victim offender registrant.

**Background**

{¶ 2} On January 8, 2019, J.W. was charged in juvenile court with three counts of gross sexual imposition, each a felony of the fourth degree, in violation of R.C. 2907.05(A)(1). The charges stem from an incident that occurred on December 12, 2018, at Cleveland Heights High School, during a chemistry class in which J.W. and the victim were classmates. J.W. allegedly made improper sexual contact with the victim by touching her inner thigh, taking the back of her hand and placing it on top of his jeans and over his erection, and cupping her vagina over her clothing when she stood up. J.W. entered a denial to all three counts, and the matter proceeded to trial before a magistrate on July 2, 2019.

{¶ 3} The victim testified that the day prior to the incident, J.W. was seated next to her and began asking sexual questions about her relationship with her ex-boyfriend. She testified that she was doing her schoolwork and just responded "sure to everything." She stated that the improper touching occurred the following day, December 12, 2018, during chemistry class. She testified the class was playing a game called Kahoot, the classroom environment was very loud, the students were moving around, and the teacher was at his computer. She also testified that during

the game of Kahoot, the questions appear on a board at the front of the room and on the teacher's computer, and that the students look at their own devices to answer the questions.

{¶ 4} The victim testified that J.W. sat next to her, about a foot away, during the last 15 minutes of the class. J.W. is a football player and a big individual. The victim testified to the improper sexual contact that occurred, stating in part:

> [T]owards the end [of class] he just sat next to me so I could give him the [Kahoot] answers.
>
> * * * [H]e would touch me like on my thigh, and he like would pull me towards him and I would pull away, and he made me touch him on his private outside of the pants with the back of my hand and I like pulled away.
>
> And I tried to stand up, and that was toward like the end of the class, so whenever I stood up to like put my things together, he grabbed me on my vagina outside of the clothes and told me that I would come around and that I would want him and the bell rang, and I just went to my next class.

{¶ 5} The victim further testified that when J.W. first touched her on her upper thigh near her vagina, she pushed his hand away and she told him to stop in an assertive voice. She also asked him if he had a girlfriend, to which he responded "yes" and "she didn't have to know anything." The victim testified that J.W. then pulled her arm toward his leg and she tried to pull her arm back, but because he is bigger than her, he had the strength to make her touch him on top of his jeans over his erect penis. She testified that she stood up and was trying to leave when he cupped his hand and touched her over her clothed vagina, after which he stated she "would come around" and "would want him." Once the school bell rang, the victim

was able to leave and go to her next class. The victim testified to being upset, shocked, and confused by what happened and to being "very uncomfortable" when she would see J.W. in the hallways after the incident occurred.

{¶ 6} The victim testified she went to her next class where she told her friend what happened. The victim's friend testified that the victim was upset and seemed more withdrawn than usual. The following day, the victim informed another teacher, whom she trusted, that she was "touched by another student" in her private area. That teacher testified that the victim was "teary eyed," and he took her to the school administrators to report the incident that occurred. A police officer who investigated the incident also testified and described the victim as "extremely upset," "emotional," "crying," and "definitely shaken up."

{¶ 7} After the juvenile court denied a Crim.R. 29 motion for acquittal, the defense witnesses testified. Another classmate, who was seated near J.W. and the victim, did not see any inappropriate touching and did not hear the victim object to any touching. He conceded that he is not always looking up while playing Kahoot. The teacher of the chemistry class testified that for the most part, he was seated at his desk administering the game of Kahoot from his computer and discussing the questions with the class. He could see J.W. and the victim from where he was seated and did not observe anything out of the ordinary. However, he testified that "kids are always like talking to each other" and he conceded that at times it can get very loud and he "can't watch all of them every second." Defense counsel made a renewed Crim.R. 29 motion that was denied by the juvenile court.

{¶ 8} The magistrate issued a decision that was adopted by the trial court. The juvenile court found J.W. delinquent of all three counts of gross sexual imposition. The juvenile court imposed a suspended commitment that totaled a minimum indefinite period of 18 months to a maximum period not to exceed the child's attainment of the age of 21, and the court placed J.W. on community control for one year with home detention. The juvenile court also classified J.W. as a Tier II sex offender/child-victim offender registrant. J.W. timely filed this appeal.

**Law and Analysis**

{¶ 9} J.W. raises three assignments of error for our review. Under his first assignment of error, he claims the juvenile court erred by denying his Crim.R. 29 motion for acquittal.

{¶ 10} A Crim.R. 29 motion for judgment of acquittal requires the court to consider "if the evidence is insufficient to sustain a conviction" of the offense or offenses charged in the indictment. Crim.R. 29(A). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 11} R.C. 2907.05(A)(1), gross sexual imposition, provides "[n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [t]he offender purposely compels the other person * * * to submit by force or

threat of force." R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying the other person." R.C. 2901.01(A)(1) defines "[f]orce" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."

{¶ 12} The Supreme Court of Ohio has stated that "[f]orce need not be overt and physically brutal, but can be subtle and psychological." *State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988). "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Shaim*, 65 Ohio St.3d 51, 55, 600 N.E.2d 661 (1992). "A threat of force can be inferred from the circumstances surrounding sexual conduct * * *." *Id.*

{¶ 13} J.W. argues that there was insufficient evidence to show that the sexual contact ever occurred. He argues that the alleged conduct occurred in a class of more than 20 students and that neither the student seated a few feet away nor the teacher observed the incident. However, there was testimony that the class was engaged in a game of Kahoot, which required students and the teacher to look at the board and at their devices. Also, the students in the class were permitted to move around and the class can get loud. The victim provided a detailed account of what transpired, and following the incident, she informed a friend and another teacher of

the improper touching that occurred. Multiple witnesses indicated that the victim appeared upset by the incident. Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found J.W. had improper sexual contact with the victim.

{¶ 14} J.W. also claims there was insufficient testimony to establish J.W. used force to touch the victim. First, we consider the sexual contact that occurred when J.W. made the victim touch him on top of his pants over his erect penis. J.W. argues the victim testified that when J.W. put her hand on top of his pants, she pulled away from him. However, the victim indicated that J.W. is a big individual and that when J.W. put her hand on top of his erect penis, he had a "strong hold" on her wrist. She testified that J.W. pulled her arm toward his leg and she tried to pull her arm back, but because he is bigger than her, he had the strength to make her touch him. It was after he took her hand and placed it on his erogenous zone that she was able to pull her hand away. The testimony reflects that she did not place her hand on J.W. of her own volition and her hand only contacted J.W.'s erogenous zone because he forced her hand there. Therefore, there was sufficient evidence of force to support gross sexual imposition with respect to this count. *See State v. Salti*, 8th Dist. Cuyahoga No. 106834, 2019-Ohio-149, ¶ 130 (finding the act of taking the victim's hand and moving it to the defendant's groin was an act of physical constraint such that there was sufficient evidence of force to support a conviction for gross sexual imposition).

{¶ 15} Next, we consider J.W.'s sexual contact with the victim's thigh and with her vagina over her clothing. We agree that even viewing the evidence in a light most favorable to the state, there was insufficient evidence upon which to establish the element of force or threat of force with respect to these sexual contacts. There was no testimony that any violence, compulsion, or physical constraint was exerted with the touching of the victim's thigh or with the touching of her vagina, over her clothing. Moreover, a threat of force cannot be inferred from the circumstances surrounding the sexual contact. Although there was testimony that J.W. was much bigger than the victim, there was no testimony that the victim was restrained or that she was overcome by fear or duress. The conduct occurred in a classroom with others present. The victim, who was J.W.'s high-school classmate and was close to J.W.'s age, testified that she told J.W. to stop and asked him if he had a girlfriend. Even after viewing the evidence in a light most favorable to the prosecution, we cannot say that any rational trier of fact could conclude that J.W. committed these acts with force or threat of force.

{¶ 16} Although the evidence was not sufficient to establish the offense of gross sexual imposition on these two counts, the evidence is sufficient to demonstrate the lesser-included offense of sexual imposition. We may modify the judgment accordingly pursuant to R.C. 2945.79(D).

{¶ 17} "Sexual imposition is a lesser-included offense of gross sexual imposition because it does not require proof of the additional element of force." *State v. Roy*, 2014-Ohio-5186, 22 N.E.3d 1112, ¶ 42 (9th Dist.), citing *State v. Staab*,

9th Dist. Lorain No. 04CA008612, 2005-Ohio-3323, ¶ 7.  R.C. 2907.06, the sexual imposition statute, provides in relevant part:  "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender knows that the sexual contact is offensive to the other person * * * or is reckless in that regard."  R.C. 2907.06(A)(1).

{¶ 18} A person may not be convicted of sexual imposition "solely upon the victim's testimony unsupported by other evidence."   R.C. 2907.06(B).   "The corroboration requirement of R.C. 2907.06(B) is a threshold inquiry of legal sufficiency to be determined by the trial court and is not a question of proof for the factfinder."  *State v. DeLuca*, 8th Dist. Cuyahoga No. 88615, 2007-Ohio-3905, ¶ 24, citing *State v. Economo*, 76 Ohio 3d 56, 666 N.E. 2d 225 (1996).

{¶ 19} J.W. argues that this court should not consider the lesser-included offense of sexual imposition because the state failed to present any evidence of corroboration.  We disagree.

{¶ 20} As explained by the Supreme Court of Ohio, the corroboration requirement "does not mandate proof of the facts which are the very substance of the crime charged * * *."  *Economo* at 59.  Moreover, "[t]he corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged."  *Id.* at 60.  Rather, "[s]light circumstances or evidence which tends to support the victim's testimony is satisfactory."  *Id.*

{¶ 21} Our review herein reflects that the state presented corroborating evidence that satisfies R.C. 2907.06(B). After the incident occurred, the victim told a friend what occurred. The following day she informed a different teacher that she was "touched by another student" in her private area, and the incident was reported to school administrators and the police. There was testimony that described the victim as being "teary eyed," "extremely upset," "emotional," "crying," and "definitely shaken up." Therefore, we find the victim's testimony was supported by sufficient other evidence to corroborate the victim's testimony as required by R.C. 2907.06(B).

{¶ 22} J.W. also argues that there is insufficient evidence to show he knew the contact was offensive to the victim. He argues that he had a sexually explicit conversation with the victim the day before the incident and claims it was reasonable for a 17-year-old boy to believe the victim was interested in a romantic relationship. We disagree. The record reflects that the victim did not consent to the sexual contact that occurred. The juvenile court heard testimony that J.W. touched the victim's inner thigh near her vagina. The victim told J.W. to stop. The victim also tried to pull away from J.W., yet he persisted and forced her to touch his pants over his erect penis. When she stood up, he cupped his hand and touched her over her vagina. The evidence was sufficient to establish that J.W. knew that the sexual contact would be offensive or was reckless in that regard. The evidence also was sufficient for the trier of fact to determine that the touching was for the purpose of sexually arousing or gratifying J.W.

{¶ 23} Accordingly, we find that there is sufficient evidence to sustain the adjudication of delinquent on Count 3 for gross sexual imposition, and on Counts 1 and 2 modified to the lesser-included offense of sexual imposition.

{¶ 24} Under his second assignment of error, J.W. claims his convictions are against the manifest weight of the evidence. When reviewing a claim challenging the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). When conducting this review, the court of appeals functions as a "thirteenth juror" with the ability to disagree with the factfinder's resolution of conflicting testimony. *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.E.2d 652 (1982). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin* at 175.

{¶ 25} J.W. argues that is "incredible" to conclude that the alleged conduct could have occurred in a class of over 20 students and in the presence of the teacher without anyone observing the actions. He states that both another student in the class and the teacher testified that they did not observe any inappropriate conduct

occur.  Our review reflects that the victim provided detailed testimony concerning the sexual contact that occurred in the classroom.  The class that day was engaged in a game of Kahoot.  The victim provided a credible account of J.W.'s actions.  She reported the incident to multiple persons who observed the victim's emotional status when relaying what occurred to her.  We do not find in resolving conflicts in the evidence that the trier of fact clearly lost its way in adjudicating J.W. a delinquent.  Also, this is not the exceptional case in which the evidence weighs heavily against J.W.'s adjudication as delinquent.

{¶ 26} Under his third assignment of error, J.W. claims the juvenile court erred by designating him as a Tier II sex offender/child-victim offender registrant. Specifically, he challenges the tier level assigned by the juvenile court.

{¶ 27} In this case, the juvenile court was required to classify J.W. as a juvenile offender registrant pursuant to R.C. 2152.82(A).  R.C. 2152.82(A) requires the court that adjudicates a child a delinquent child to issue as part of the dispositional order an order that classifies the child a juvenile offender registrant when certain conditions are present.  There is no dispute that the offenses in this matter are sexually oriented offenses, that J.W. was between the ages of 14 and 17 at the time of the offenses, that J.W. has a prior adjudication for committing a sexually oriented offense, and that the conditions of R.C. 2152.82 were met.  Therefore, mandatory classification was required by R.C. 2152.82(A).[1]

---

[1] R.C. 2152.83 only applies if the "court was not required to classify the child a child juvenile offender registrant under [R.C. 2152.82]."  R.C. 2152.83(A)(1)(c) and (B)(1)(3).

{¶ 28} Prior to issuing the juvenile-offender-registrant order required by R.C. 2152.82(A), the juvenile court must conduct a hearing to determine the tier level to assign a juvenile offender registrant. R.C. 2152.82(B); R.C. 2152.831. The juvenile court has discretion to determine the juvenile offender registrant's tier classification. *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 20. Moreover, in making its determination, the court has discretion to consider all relevant information. *In re Antwon C.*, 182 Ohio App.3d 237, 2009-Ohio-2567, 912 N.E.2d 182, ¶ 17 (1st Dist.). In light of the prior adjudication for a sexually oriented offense and the factual circumstances in this case, we cannot say the trial court abused its discretion in classifying J.W. as a "tier II sex offender/child-victim offender registrant."

**Conclusion**

{¶ 29} After reviewing the entire record, we affirm the adjudication of delinquent on Count 3 for gross sexual imposition; we modify the adjudication of delinquent on Counts 1 and 2 to the lesser-included offense of sexual imposition, and we remand for redisposition; and we affirm J.W.'s classification as a Tier II sex offender/child-victim offender registrant.

{¶ 30} Judgment affirmed in part and modified in part. Case remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. Case remanded to the trial court for further proceedings.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR