[Cite as *State v. Dunn*, 2023-Ohio-4413.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Nos. 112301 and 112916 |
| v. | : | |
| MICHAEL C. DUNN, | : | |
| Defendant-Appellant. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, MODIFIED IN PART, AND
REMANDED
**RELEASED AND JOURNALIZED:** December 7, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-651679-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Margaret Graham, Assistant Prosecuting
Attorneys, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and
Rick Ferrara, Assistant Public Defender, *for appellant*.

Michael Dunn, *pro se*.

MICHAEL JOHN RYAN, J.:

{¶ 1} After a jury trial, defendant-appellant Michael Dunn was found guilty of gross sexual imposition, sexual imposition, and breaking and entering. In 8th Dist. Cuyahoga No. 112301, Dunn, by and through counsel, appeals from his December 2022 judgment of conviction and challenges the convictions and the trial court's judgment denying his motion to dismiss based on speedy trial grounds. In 8th Dist. Cuyahoga No. 112916, Dunn, pro se, appeals from the trial court's June 2023 order altering the terms of his sentence. Sua sponte, this court has consolidated the two appeals. *See* motion No. 567814 (Sept. 20, 2023).

{¶ 2} After a thorough review of the facts and pertinent law, we affirm in part, affirm as modified in part, and remand for further proceedings.

**Procedural History**

{¶ 3} On July 10, 2020, Dunn was arrested as a result of conduct which, in part, resulted in the charges in this case. Dunn was declared indigent, and counsel was assigned for him. In August 2020, Dunn was charged in a nine-count indictment that alleged crimes against four Jane Doe victims. Dunn posted bond on August 3, 2020.

{¶ 4} At the time of his indictment in this case, Dunn was under indictment in an unrelated case, Cuyahoga C.P. No. CR-20-647364-A. Dunn posted bond in the first case on February 6, 2020, and remained on bond in that case until September 23, 2020. After September 23, 2020, Dunn remained in custody on both the first case and the within case until February 22, 2022, when the trial court in both cases

released him on GPS monitoring.  The first case was dismissed by the state in December 2022.  Dunn remained on GPS monitoring from February 2022 until this case went to trial in November 2022.

{¶ 5} After indictment in this case, the defense made a discovery request.  In August 2020, the state responded to Dunn's discovery request and sought reciprocal discovery from the defense.  In March 2021, Dunn made another demand for discovery, to which the state responded in September 2021.  The docket does not reflect that the defense ever responded to the state's request for reciprocal discovery, and the state maintains in this appeal that it did not.

{¶ 6} There were many continuances in this case — numerous requests made by the defense were granted and the trial was continued three times on the court's own initiative.  Specifically, the trial court continued the case in September 2021, because the jury was unavailable; in May 2022, because the court was engaged in trial on another case; and in July 2022, because the trial court was "unavailable."  The docket does not reflect that the state sought any continuances.

{¶ 7} During the course of the proceedings, Dunn had three different trial attorneys, necessitating further pretrial practice.  Dunn, acting pro se while represented by counsel, filed four motions to dismiss, which the trial court disregarded.[1]  *See* docket, motions to dismiss filed on Sept. 1, 2021, Mar. 28, 2022,

---

[1] A defendant has a right to counsel, or a right to represent himself or herself pro se, but a defendant does not have the right to both counsel and pro se representation simultaneously, which is referenced as hybrid representation.  *State v. Mongo*, 8th Dist. Cuyahoga No. 100926, 2015-Ohio-1139, ¶ 13.  When a defendant is represented by

June 13, 2022, and Aug. 29, 2022. One of Dunn's attorneys filed a motion to dismiss based on speedy trial grounds. In the motion, counsel stated that he was "under strict instructions to file said motion for [the trial court's] consideration" and attached a motion that had been prepared by Dunn. Counsel offered no argument of his own in the motion as to how Dunn's speedy trial rights had allegedly been violated. *See* Apr. 26, 2022 motion to dismiss.

{¶ 8} Dunn requested a hearing on the motion to dismiss filed by counsel, which the trial court granted. The motion was denied after the hearing. Trial commenced on November 7, 2022.

{¶ 9} Prior to the start of the trial, the state dismissed Counts 2 through 5. The counts that remained (which were renumbered) were relative to two victims. As renumbered, Count 1 charged that Dunn committed gross sexual imposition against Jane Doe 1; Counts 2 and 4 charged that Dunn committed gross sexual imposition against Jane Doe 4; Count 3 charged that Dunn committed breaking and entering on the property of Jane Doe 4; and Count 5 charged that Dunn engaged in public indecency.

{¶ 10} At the close of the state's case, the defense made a Crim.R. 29 motion for judgment of acquittal, which was denied. The defense rested without presenting any witnesses and renewed its Crim.R. 29 motion, which was again denied. The trial court granted the defense's request to instruct on sexual imposition, the lesser

counsel, a trial court cannot consider a defendant's pro se motion. *Id*. at ¶ 14. Such an act by the court supports hybrid representation in violation of the established law. *Id*.

included offense of gross sexual imposition. The jury found Dunn guilty of Counts 1, 3, 4, and 5, as indicted, and guilty of the lesser included offense of Count 2, that being sexual imposition, a misdemeanor. The trial court sentenced Dunn to a suspended four-year prison term and six months of house arrest.

{¶ 11} In June 2023, after the trial court issued its judgment of conviction, and after Dunn filed his appeal from that judgment, the trial court issued an order altering the terms of the previously imposed sentence.

**Trial Testimony**

{¶ 12} The victim of Count 1, Jane Doe 1, was a mail carrier whose route was in Dunn's neighborhood. The victim of Counts 2, 3, and 4, Jane Doe 4, was a neighbor of Dunn, who had known him for years; she was a friend of Dunn's mother, and her son and Dunn were friends.

**Mail Carrier Victim**

{¶ 13} The incident with the mail carrier occurred on June 11, 2020. The mail carrier had had the same route in Dunn's neighborhood for approximately four or five years and had seen Dunn before. He would often attempt to "flirt" with her, and she would ignore him. The victim did not testify that Dunn made any threats to her before the incident giving rise to this case. She also did not indicate that she was uncomfortable or fearful of Dunn whenever he approached her or spoke to her before this incident.

{¶ 14} On the day in question, she was delivering mail when Dunn crossed the street and approached her. Dunn asked the carrier for "a cup" and then

"grabbed" or "gripped" her right breast with his hand. The mail carrier testified that she had her cell phone in a pocket covering her right breast and after Dunn grabbed or gripped her breast, he then tried to grab her cell phone. Dunn then picked up a tree stump and threw it at her but it did not hit her. The mail carrier pepper sprayed Dunn and screamed. A neighbor came out of his house, and Dunn walked away. The mail carrier called her supervisor, who came and picked her up; the two called the police. The police apprehended Dunn nearby and transported him to a police station. The victim went to the station where she positively identified Dunn as the man who had "gripped" her breast. The victim testified that the incident with Dunn was traumatic for her and the ensuing fear of being attacked caused her to resign from her position with the post office the following February.

**Neighbor Victim**

{¶ 15} The second victim, the neighbor, was in her early 70s at the time of the incidents with Dunn. The first incident occurred in June 2020 while the neighbor was doing yard work in the front of her house. She testified that Dunn walked by and "felt" her buttocks with his hand and then ran away. The victim had electric hedge trimmers and she tried to hit Dunn with them, but in the process damaged the cord; later, Dunn fixed the cord for her.

{¶ 16} The next set of incidents occurred on July 3, 2020, when the neighbor was again doing yard work in the front of her house. The first encounter that day occurred when Dunn came onto her property without her permission and started talking inappropriately. A neighbor guided Dunn away. Dunn returned, however.

The victim, who was in her front yard, saw Dunn approaching and walked to the side of her house to get away from him. Dunn followed the victim, and this time, he "felt" the victim on her buttocks. The victim testified that she hit Dunn with her rake. Dunn left, but returned yet again, and this time he pulled his pants down and showed her his buttocks and told her to hit him on the buttocks with her yard clippers. The victim called the police, who, upon responding, apprehended Dunn.

{¶ 17} Detective Kevin Navratil of the Cleveland Division of Police was the investigating detective. Dunn consented to two interviews with the detective. During the first interview, Detective Navratil asked Dunn why he was pepper sprayed by the mail carrier, and Dunn responded because he was "grabbing" her. Dunn later retracted that statement, however. During the second interview, Dunn denied ever touching his neighbor, but he told Detective Navratil about an incident where a man told him to stop "grabbing his woman's [the victim neighbor] ass."

## Assignments of Error:  Case No. 112301

    I.      Insufficient evidence supported appellant's convictions for gross sexual imposition.

    II.     Insufficient evidence supported appellant's conviction for breaking and entering.

    III.    The manifest weight of the evidence did not support appellant's convictions for gross sexual imposition or breaking and entering.

    IV.    Appellant was denied his statutory right to a speedy trial.

## Assignment of Error:  Case No. 112916

    V.     The trial court lacked statutory authority to modify the terms of probation in violation of the Double Jeopardy Clause.

**Law and Analysis**

{¶ 18} In his first assignment of error, Dunn contends that the evidence was insufficient to support his gross sexual imposition convictions. In his second assignment of error, Dunn contends that the evidence was insufficient to support his breaking and entering conviction. In his third assignment of error, Dunn contends that his gross sexual imposition and breaking and entering convictions are against the manifest weight of the evidence. We first consider Dunn's sufficiency challenge.

{¶ 19} When reviewing a challenge to the sufficiency of the evidence, we review the evidence admitted at trial and "determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 20} Dunn was convicted of gross sexual imposition under R.C. 2907.05(A)(1), which provides that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender purposely compels the other person * * * to submit by force or threat of force." "Force" is

defined in R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person of thing."

{¶ 21} Dunn contends that the state's evidence failed to demonstrate the force element because (1) his "touching neither forced any action by either victims nor included manipulation of their clothing," (2) "neither [victim] was subject to psychological manipulation" by him, (3) "[n]either victim was physically manipulated" by him, because he "touched them briefly," and (4) "neither was harmed by [him], threatened prior to the touching, or placed in fear by [him] in order to accomplish the touching." Dunn cites *In re J.W.*, 8th Dist. Cuyahoga No. 109031, 2020-Ohio-4065, in support of his lack of force argument.

{¶ 22} In *In re J.W.*, the juvenile delinquent and the victim were high school students who had a class together. One of the charges against the delinquent — for gross sexual imposition — involved the delinquent "cupp[ing] his hand and touch[ing] [the victim] over her clothed vagina." *Id.* at ¶ 5. The delinquent also touched the victim's thigh over her clothing. On appeal, this court found the evidence insufficient to support gross sexual imposition for this conduct, and, rather, found it to be the lesser included offense of sexual imposition. However, the delinquent was found guilty of gross sexual imposition relative to another incident that happened the same day, in the same class, against the same victim, whereby he made the victim touch his pants over his erect penis. The victim attempted to pull away, but the delinquent had a "strong hold" on her wrist. *Id.* at ¶ 14. This court upheld the count of gross sexual imposition relative to that conduct.

{¶ 23} In another case from our district, this court found that a delinquent's act of "grabbing" a victim's breast while she was walking in the hallway was sexual imposition, which did not require the element of force that gross sexual imposition does. *In re J.A.*, 8th Dist. Cuyahoga No. 111743, 2023-Ohio-222, ¶ 27-31. *See also State v. Biggs*, 2022-Ohio-2481, 192 N.E.3d 1306, ¶ 17 (5th Dist.), *appeal not allowed,* 168 Ohio St.3d 1457, 2022-Ohio-4201, 198 N.E.3d 871 (modifying the defendant's gross sexual imposition conviction to sexual imposition, finding that although evidence of force would be sufficient where the state presents evidence that the defendant manipulated *both* the victim's body and the victim's clothing during the sexual contact or conduct, the state has failed to prove force where "there is no evidence in the record Appellant employed any force or threat of force beyond the force of the act itself, which is legally insufficient to meet the 'force' element of the crime of gross sexual imposition").

{¶ 24} In response, relative to the mail carrier's testimony, the state reiterates the victim's testimony that Dunn "approached her and grabbed her entire right breast with his hand against her will. While doing so, [Dunn] verbally said, 'grab a cup.'" The state contends that that "testimony was sufficient for the jury to find that [Dunn] committed gross sexual imposition against" the victim.

{¶ 25} On the authority of *In re J.W.,* 8th Dist. Cuyahoga No. 109031, 2020-Ohio-4065, and *In re J.A.*, the evidence is insufficient to sustain a gross sexual imposition conviction relative to Dunn's conduct toward the mail carrier victim. We note that although the victim here took evasive action to prevent Dunn from

touching her a second time and was upset afterward, the same was true for the victim in *In re J.W.* *See J.W.* at ¶ 5 ("The victim further testified that when J.W. first touched her on her upper thigh near her vagina, she pushed his hand away and she told him to stop in an assertive voice." "The victim testified to being upset, shocked, and confused by what happened and to being 'very uncomfortable' when she would see [the delinquent] in the hallways after the incident occurred.").

{¶ 26} Likewise, in *Biggs*, 2022-Ohio-2481, 192 N.E.3d 1306, the Fifth Appellate District found the evidence insufficient to support the force element of gross sexual imposition in a situation where the defendant stuck his hand down the front of the victim's pajama pants, inside her underwear, and massaged the outside of her vagina. The victim forcibly removed the defendant's hand and left the room she had been in with the defendant. The victim testified that she was scared and cried because she was "flustered" by the unexpected sexual activity. *Id.* at ¶ 6. The court reasoned that

> [t]he instant case involves an adult victim, who was not asleep. There was no evidence Appellant removed [the victim's] clothing or manipulated her clothing beyond reaching inside her pajama pants and underwear. Appellant did not tell the victim to do anything or refrain from doing anything, and did not threaten her in any way if she failed to comply. Appellant did not move or manipulate the victim herself, or any of her limbs. There was no testimony Appellant held her down in order to commit the act of touching her. While [the victim] testified she forcibly removed Appellant's hand from inside her pajama pants, there is no evidence he struggled with her to continue touching her; rather, she was able to leave the room without interference from Appellant. Although [the victim] was flustered, crying, and scared because she did not expect the touching to happen, there is no evidence in the record Appellant employed any force or threat of force beyond the force of the act itself, which is legally insufficient to meet the "force"

element of the crime of gross sexual imposition. We find the evidence legally insufficient to convict Appellant of the crime of gross sexual imposition.

*Id.* at ¶ 22.

{¶ 27} Similarly in this case, Dunn did not manipulate the mail carrier's clothing, he did not tell her to do anything or prevent her from doing anything, and he did not threaten her. Dunn's action of grabbing the mail carrier's breast was merely the force of the act itself.[2]

{¶ 28} At trial in its closing argument, the state referred to various actions taken by Dunn, such as trying to grab her pepper spray, trying to grab her cell phone, and throwing a tree stump at the victim as the force for the gross sexual imposition. The victim's testimony, however, was that all these actions occurred *after* Dunn had already grabbed her breast.

{¶ 29} In light of the above, the conviction for gross sexual imposition rendered under Count 1, relative to the mail carrier victim, is not supported by sufficient evidence. However, we find the state's evidence was sufficient to support the lesser-included offense of sexual imposition under R.C. 2907.06(A)(1), which does not include the force element. *See In re J.W.*, 8th Dist. Cuyahoga No. 109031, 2020-Ohio-4065, at ¶ 16 ("Although the evidence was not sufficient to establish the

---

[2] An example of the type of force needed for a sexual offense conviction is provided in *State v. Haynik*, 8th Dist. Cuyahoga No. 111769, 2023-Ohio-717, ¶ 37, where the victim testified that the defendant told her "'I am going to make love to my woman' and she said, 'no, no, you're not.' [The defendant] ripped the front zipper of her pajama while she pulled away. He then put her on her back on the mattress and penetrated her."

offense of gross sexual imposition * * *, the evidence is sufficient to demonstrate the lesser-included offense of sexual imposition. We modify the judgment accordingly pursuant to R.C. 2945.79(D)."). Sexual imposition is a misdemeanor offense. *See* R.C. 2907.06(C).

{¶ 30} However, we find that the evidence was sufficient relative to Count 4, the gross sexual imposition conviction regarding Dunn's conduct toward the neighbor victim on July 3, 2020, when he "felt" on the victim's buttocks. In *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661 (1992), the Supreme Court of Ohio held that "[a] threat of force can be inferred from the circumstances surrounding sexual conduct." *Id.* at paragraph one of the syllabus. The evidence in this case demonstrates that the neighbor's July 3 encounter with Dunn was not the first of this type. A few weeks prior, Dunn approached the neighbor while she was doing work in her front yard and "felt" her buttocks. The encounter was unwelcome, as demonstrated by the victim attempting to hit Dunn with her hedge clippers.

{¶ 31} On July 3, Dunn again came onto the neighbor's property while she was doing yard work and began talking inappropriately, in a sexual manner, to her. Dunn was guided away by a neighbor, but soon returned. The victim, upon seeing Dunn's approach, walked to the side of her house to get away from him. Dunn pursued her, reached her, and "felt" on her buttocks. A threat of force can be inferred from these circumstances. Because Dunn had previously touched the neighbor in an inappropriate sexual manner in the past, she was weary of him and tried to escape from him; he pursued her, however, and was able to touch her again

in an appropriate sexual manner. This evidence was sufficient to support the force element of the gross sexual imposition conviction.

{¶ 32} The first assignment of error is sustained in part and overruled in part. The conviction in Count 1 is modified to sexual imposition; the conviction in Count 4 stands as is.

{¶ 33} Relative to the breaking and entering on the neighbor's property on July 3, the state was required to prove that Dunn "trespass[ed] on the land or premises of another, with purpose to commit a felony." R.C. 2911.13(B). Dunn contends that because the evidence was insufficient under Count 4 to support the felony conviction of gross sexual imposition, the breaking and entering conviction necessarily fails. Because we have found under Dunn's first assignment of error that he did commit a felony (i.e., gross sexual imposition), his conviction for breaking and entering was supported by sufficient evidence. The second assignment of error is therefore overruled.

{¶ 34} In his third assignment of error, Dunn contends that his gross sexual imposition and breaking entering convictions are against the manifest weight of the evidence.

{¶ 35} While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins*, 78 Ohio St.3d at 386-387, 678 N.E.2d 541. The test for sufficiency requires a

determination of whether the state has met its burden of production at trial; a manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins* at *id.* Unlike a claim that the evidence is insufficient to support a conviction, which raises a question of law, manifest weight challenges raise factual issues. "Under the manifest weight-of-the-evidence standard, a reviewing court asks the following question: whose evidence is more persuasive — the state's or the defendant's?" *State v. Williams*, 8th Dist. Cuyahoga No. 108275, 2020-Ohio-269, ¶ 86. When a defendant argues his or her conviction is against the manifest weight of the evidence, the court,

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 36} We have found that the state's evidence was insufficient to support Dunn's gross sexual imposition conviction under Count 1 and modified it to a sexual imposition conviction. The sexual imposition conviction is not against the weight of the evidence. To obtain a sexual imposition conviction under R.C. 2907.06(A)(1), the state had to prove that Dunn had "sexual contact with another" who was not his spouse, knowing "that the sexual contact is offensive to the other person * * * or is reckless in that regard."

{¶ 37} Dunn had previously attempted to "flirt" with the mail carrier, and she ignored him. That evidence showed that Dunn knew that touching the victim's breast over her clothing was offensive or that defendant acted recklessly with regard to whether it was offensive. The weight of the evidence supports a conviction for sexual imposition under Count 1.

{¶ 38} The weight of the evidence supports the July 3, 2020 gross sexual imposition against the neighbor. Dunn previously had an encounter with the neighbor in June 2020, where she expressed her disdain for his sexual behavior toward her (i.e., the sexual imposition conviction rendered by the jury under Count 2). And on July 3, when he first approached the neighbor, he began talking to her in an inappropriate sexual manner and was guided away by a neighbor. He returned, however, and despite the neighbor's attempt to escape from him, he reached her and again touched her in an inappropriate sexual manner. This is not an exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice. The weight of the evidence supports a conviction for gross sexual imposition under Count 4.

{¶ 39} The weight of the evidence also supports a conviction under Count 3 for breaking and entering on the neighbor's property on July 3. Dunn came onto the neighbor's property, without her permission, to commit a felony (gross sexual imposition). The jury's guilty verdict on that count did not demonstrate that it clearly lost its way and created a manifest miscarriage of justice.

{¶ 40} The third assignment of error is overruled.

{¶ 41} In his fourth assignment of error, Dunn contends that his statutory speedy trial rights were violated.

{¶ 42} An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Section 10, Article I, of the Ohio Constitution. *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 32. The federal and state speedy trial rights are essentially equivalent. *State v. Butler*, 19 Ohio St.2d 55, 57, 249 N.E.2d 818 (1969). Ohio's speedy trial statutes, found in R.C. 2945.71, et seq., were implemented to enforce these constitutional guarantees. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 661 N.E.2d 706 (1996); *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, ¶ 10.

{¶ 43} R.C. 2945.71(C)(2) requires a criminal defendant against whom a felony charge is pending to be brought to trial within 270 days from the date of his or her arrest. For purposes of computing time under R.C. 2945.71(C)(2), each day the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. *See* R.C. 2945.71(E). Thus, under the "triple count provision" contained in R.C. 2945.71(E), a defendant held in jail without bail pending a felony charge must be tried within 90 days. However, the triple count provision applies "only to those defendants held in jail in lieu of bail solely on the pending charge." *State v. MacDonald*, 48 Ohio St.2d 66, 68, 357 N.E.2d 40 (1976), paragraph one of the syllabus.

{¶ 44} Once the statutory limit has expired, the defendant has established a prima facie case for dismissal. *State v. Butcher*, 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368 (1986). At that point, the burden shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72. *Cook* at 55-56. However, because "some degree of flexibility is necessary," the General Assembly has "allowed for extensions of the time limits for bringing an accused to trial in certain circumstances." *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 24. Accordingly, R.C. 2945.72 contains an exhaustive list of events and circumstances that extend the time within which a defendant must be brought to trial. *Id.* Such tolling events include "[a]ny period during which the accused is unavailable for hearing or trial," "[a]ny period of delay occasioned by the neglect or improper act of the accused," any period of delay "necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused, and any continuances granted upon the accused's own motion," and "the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(A), (D), (E), and (H).

{¶ 45} Dunn was arrested for the crimes in this case on July 10, 2020. His trial commenced in November 2022. Dunn contends that his "speedy trial rights were violated when he went to trial over two years after his case was originally charged." At the hearing on his motion to dismiss, the state maintained that it was bringing the case to trial within the statutory time frame, given that (1) the triple court provision did not apply to some of the time Dunn was in custody because he

had also been under indictment since January 2020 in another separate case, Cuyahoga C.P. No. CR-20-647364-A, and from September 23, 2020, Dunn was being held in jail on both cases; (2) at the time of trial, Dunn was on his third attorney, which brought forth many delays in the discovery process; (3) the defense never responded to the state's reciprocal discovery demand; (4) numerous pretrials were continued at Dunn's behest; and (5) the common pleas court's administrative Covid protocols caused delay.

{¶ 46} At the trial-court level, Dunn contended that the time he was on GPS monitoring should have counted under the triple count provision of R.C. 2945.71(E) because his liberty was confined like he was in jail. Dunn also contends that the court's continuances should be counted against the state. We are not persuaded by Dunn's contentions.

{¶ 47} The plain language of R.C. 2945.71(E) provides that it applies when a defendant is "held *in jail* in lieu of bail." (Emphasis added.) "Words used in a statute are to be taken in their usual, normal, and customary meaning. Further, unless a statute is ambiguous, the court must give effect to the plain meaning of a statute." *Cleveland Hts. v. Jones*, 8th Dist. Cuyahoga No. 86313, 2006-Ohio-454, ¶ 10, citing *State ex rel. Pennington v. Gundler*, 75 Ohio St.3d 171, 173, 661 N.E.2d 1049 (1996). Dunn was put on house arrest as a condition of bail rather than an order of confinement. *See also State v. Radcliff*, 4th Dist. Vinton No. 99CA535, 2000 Ohio App. LEXIS 6338, 2 (Dec. 19, 2000).

{¶ 48} In regard to Dunn's contention that the court's continuances should count against the state, we note that this case was initiated (July 2020), and remained pending, through the height of the Covid-19 pandemic. It was noted by the trial court that, in at least one of the instances, it was unavailable because of the limited jury pool. The pool was limited by both people's fears and anxieties about being in public settings and the common pleas court's rules about the number of jurors the courthouse could safely accommodate at the same time. Specifically, the case was set for trial on September 13, 2021; the parties and witnesses were present and ready to proceed, as was the court. However, the court was forced to continue the case, noting the following: "We [were] set today, but because of the limited number of jurors, as a result of the COVID protocol, the other judge started their case and took the jurors so we don't have jurors to start your case, otherwise we would start it today." Tr. 15.

{¶ 49} This court has held that pandemic-related continuances are not to be counted against the state. *See State v. Tuttle*, 8th Dist. Cuyahoga No. 110508, 2022-Ohio-303, ¶ 31. A trial court's sua sponte continuance extends speedy-trial time so long as the record demonstrates "the 'necessity and reasonableness of the continuance.'" *State v. Martin*, 56 Ohio St.2d 289, 293, 384 N.E.2d 239 (1978), quoting *State v. Wentworth*, 54 Ohio St.2d 171, 176, 375 N.E.2d 424 (1978). Additionally, the numerous continuances that were granted upon Dunn's request — as compared to none granted for the state — and Dunn's change of counsel three times throughout the case accounted for the majority of the delay.

{¶ 50} On this record, Dunn has not demonstrated that his statutory speedy trial right was violated. The fourth assignment of error is overruled.

{¶ 51} In his final assignment of error, Dunn challenges the trial court's June 1, 2023 order, which states in toto: "Defendant is permitted to seek employment and attend AA/NA meetings from the hours of 8:00am to 8:00pm with the approval of probation officer."

{¶ 52} Because we have modified one of Dunn's convictions, the case will be remanded for resentencing and the issuance of an appropriate judgment of conviction. Thus, the challenge to the trial court's June 1, 2023 order is moot.

{¶ 53} Judgment affirmed in part and modified in part; case remanded for resentencing and the issuance of an appropriate judgment of conviction.

It is ordered that appellee and appellant equally split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EILEEN A. GALLAGHER, P.J., CONCURS;
MICHELLE J. SHEEHAN, J., CONCURS IN JUDGMENT ONLY IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

MICHELLE J. SHEEHAN, J., CONCURRING IN JUDGMENT ONLY IN PART AND DISSENTING IN PART:

{¶ 54} Respectfully, I concur in judgment only in part and dissent in part. I concur in judgment only with the majority so far as the majority affirms Dunn's convictions on Counts 2, 3, 4, and 5 of the indictment and find that Dunn's right to a speedy trial was not violated. I dissent to the reversal of Dunn's conviction for gross sexual imposition as charged in Count 1 of the indictment.

{¶ 55} Dunn was convicted of the crime of gross sexual imposition, a violation of R.C. 2907.05, which provides:

(A)   No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1)   The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

{¶ 56} Dunn argues that the state presented insufficient evidence of "force or threat of force" to sustain the conviction for gross sexual imposition. "Force" is expressly defined by the Revised Code as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51, 55, 600 N.E.2d 661 (1992). "A threat of force can be inferred from the circumstances surrounding sexual conduct * * *." *Id.*

{¶ 57} In this case, the state presented evidence both that Dunn used force in the commission of the offense and from which the trier of fact could infer that Dunn created the belief that physical force would be used if V.W. did not submit. V.W. was on a street with no other people. V.W. testified that Dunn's approach of her created apprehension and fear within her. She knew of Dunn; he had approached and tried to flirt with her multiple times in the past. She ignored him and didn't speak with him when he approached her those prior times. On the day Dunn approached V.W., Dunn crossed the street. When he reached her, he asked for a "cup" and then grabbed her breast with force; within her testimony, she described Dunn's act as "gripping" her breast. Further, V.W. specifically distinguished Dunn's actions as being more than mere touching. V.W. testified that Dunn attempted to grab or grip her breast again and then attempted to take her phone from her breast pocket. Dunn then picked up a tree stump or log and threw it at her. At that point, Dunn's attack was then thwarted only when V.W. pepper-sprayed him.

{¶ 58} The state presented evidence that Dunn used force beyond the mere touching of V.W.'s breast. She testified that he grabbed and gripped V.W.'s breast, he continued to attempt to grab her breast, and after V.W. resisted, Dunn retrieved a tree log and attempted to hit her. This evidence, if believed by the trier of fact, is sufficient to infer Dunn used physical force in committing the offense of gross sexual imposition. Further, the circumstances of Dunn's approach, Dunn's persistence in attempting to grab and grip V.W.'s breast for a second time, and his retrieval of a tree log to use against her, constitute evidence that was sufficient for the finder of

fact to infer that Dunn created the belief that he would use physical force. Accordingly, I would find that the state presented sufficient evidence of the element of force and would affirm Dunn's conviction on Count 1.

{¶ 59} I also dissent in part because I am not persuaded that this case is similar to the cases relied upon by the majority.[3] In *In re J.W.*, 8th Dist. Cuyahoga No. 109031, 2020-Ohio-4065, this court noted that the evidence of the offender touching his victim's thigh and vagina over her clothing had no evidence that the victim "was overcome by fear or duress" and occurred in a time and place with others present. The circumstances in this case as described by V.W. are inapposite; V.W. testified to being fearful of Dunn on his approach, there was no evidence others were present, and Dunned grabbed and gripped her breast and attempted to do so a second time. Further, in *State v. Biggs*, 2022-Ohio-2481, 192 N.E.3d 1306, ¶ 6 (5th Dist.), the court acknowledged in its analysis that the perpetrator's abandonment of the crime was a factor in determining no force was used stating, "[T]here is no evidence [the offender] struggled with her to continue touching her * * *." In contrast to the facts of that case, Dunn engaged in a struggle with V.W., attempted

---

[3] In addition to the cases I discuss, the majority relies upon *In re J.A.*, 8th Dist. Cuyahoga No. 111743, 2023-Ohio-222, to find that there was insufficient evidence to sustain Dunn's conviction for gross sexual imposition. In *In re J.A.*, the appellant was only charged with one count of sexual imposition; he was not charged with a crime that included the element of force. *Id.* at ¶ 3. Because of this, neither the trier of fact nor the appellate court in that case considered whether force was used in the commission of the crime of sexual imposition. As such, I would not find that *In re J.A* supports a finding in this case that there was insufficient evidence on the element of force to sustain Dunn's conviction for gross sexual imposition.

to continue touching her, retrieved a tree log to use against her, and had to be pepper sprayed to stop the assault.